

NOTICE: THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMITS OF LIABILITY CAN BE COMPLETELY EXHAUSTED BY DEFENSE EXPENSES AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO LIABILITY FOR DEFENSE EXPENSES OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.

PLEASE READ THE ENTIRE POLICY CAREFULLY.

| **Policy Number** | **The Hanover Insurance Company** |
|---|---|
| LHC-A866791-09 | 440 Lincoln Street<br>Worcester, Massachusetts 01653<br>(A Stock Insurance Company, herein called the **Insurer**) |

**Item 1. NAMED INSURED AND ADDRESS**

Bela Flor Nurseries, Inc.
28615 SE Outer Rd.
Harrisonville, MO 64701

**Item 2. POLICY PERIOD**

Inception Date: 06/30/2022   Expiration Date: 06/30/2025
(12:01 AM standard time at the address shown in Item 1)

**Item 3. COMBINED POLICY AGGREGATE LIMIT OF LIABILITY:** ☐ YES ☒ NO

If "Yes" is checked above the Combined Policy Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** is N/A

**Item 4. COVERAGE PARTS APPLICABLE TO THIS POLICY**

| Coverage Part | Yes | No |
|---|:---:|:---:|
| Directors & Officers and Entity Liability Coverage Part | ☒ | ☐ |
| Employment Practices Liability Coverage Part | ☒ | ☐ |
| Fiduciary Liability Coverage Part | ☐ | ☒ |
| Cyber Privacy & Security Coverage Part | ☐ | ☒ |
| Crime Coverage Part | ☐ | ☒ |
| Kidnap & Ransom Coverage Part | ☐ | ☒ |

Form 904 1002 Ed. 05/18                                                                                    Page 1 of 2



| Item 5. | **COVERAGE PREMIUM** | $22,440.00 |
| | | N/A |
| | **Total Amount:** | **$22,440.00** |

Item 6.     **ENDORSEMENTS EFFECTIVE AT INCEPTION:** See Schedule of Forms attached.

Item 7.     **NOTICE TO INSURER**
Report a claim to the Company as required to:

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA 01615

**National Claims Telephone Number**: 800-628-0250
**Facsimile:** 800-399-4734
**Email:** firstreport@hanover.com

**Agent on behalf of:**     HUB INTERNATIONAL MIDWEST SPECIALTY PROGRAM GROUP

55 E JACKSON BLVD

CHICAGO IL 60604

We have caused this Policy to be signed by our President and Secretary and countersigned where required by a duly authorized agent of the Company.

John C. Roche, President        Charles F. Cronin, Secretary

Form 904 1002 Ed. 05/18        Page 2 of 2


*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.*

In consideration of the premium paid, in reliance upon the statements in the **Application** and subject to the Declarations, limitations, conditions, definitions and other provisions of this Policy, including endorsements hereto, the **Insurer** and the **Insureds** agree as follows:

**I.  COMMON TERMS AND CONDITIONS**

The Common Policy Terms and Conditions of this Policy shall apply to all Coverage Parts. Unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part of this Policy shall apply only to that Coverage Part and shall not apply to any other Coverage Part of this Policy. If any provision in this Common Policy Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part. Any defined term referenced in this Common Policy Terms and Conditions and also defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part, unless otherwise stated.

**II.  DEFINITIONS**

**Application** means:

A.  Any portion of an application given to the **Insurer** for this Policy including any attachments, written information and materials provided to the **Insurer** by or on behalf of an **Insured** for the purposes of the **Insurer's** underwriting of this Policy; and

B.  Any warranty provided to the **Insurer** within the past three years in connection with any coverage part or policy of which this Policy is a renewal or replacement.

**Claim** shall have the meaning as defined in the applicable Coverage Part.

**Defense Expenses** shall have the meaning as defined in the applicable Coverage Part.

**Executive** means any natural person who is, was, or shall become:

A.  A duly-elected or appointed director, officer, manager, in-house general counsel, or trustee of the **Insured Entity**;

B.  A duly elected or appointed manager or member of a Board of Managers of a Limited Liability Company, boards, committees or other units operated under the **Insured Entity's** charter or with the **Insured Entity's** written approval; or

C.  Any person holding an equivalent position to those described in A. and B. above in any **Insured Entity** incorporated, formed or organized anywhere in the world.

**Insured** shall have the meaning as defined in the applicable Coverage Part.

**Insured Entity** means the **Named Insured** and any **Subsidiary**.

**Insured Individual** shall have the meaning as defined in the applicable Coverage Part.

**Insurer** means the entity issuing this Policy as designated in the Policy Declarations.

**Liability Coverage Part** means individually or collectively: the Directors, Officers and Entity Liability, Employment Practices Liability and Fiduciary Liability Coverage Parts; and Insuring Agreements A. Privacy and Security Liability and B. Cyber Media Liability of the Cyber Privacy and Security Coverage Part, if purchased and as set forth in Item 4. of the Policy Declarations.

**Loss** shall have the meaning as defined in the applicable Coverage Part.





**Named Insured** means the entity designated in Item 1. of the Policy Declarations.

**Non-Liability Coverage Part** means individually or collectively:

A. The Crime Coverage Part and Kidnap & Ransom Coverage Part; and

B. Insuring Agreements C. through I. of the Cyber Privacy and Security Coverage Part;

If purchased and as set forth in Item 4. of the Policy Declarations.

**Policy Period** means the period of time from the inception date shown in Item 2. of the Policy Declarations to the earlier of the expiration date shown in Item 2. of the Policy Declarations or the effective date of termination of this Policy.

**Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Related Claims** means all **Claims** based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances, situations, transactions, results, damage or events.

**Related Wrongful Act** shall have the meaning as defined in the applicable Coverage Part.

**Subsidiary** means:

A. Any entity in which an **Insured Entity** owns more than fifty percent (50%) of the outstanding securities representing the right to vote for election of or to appoint directors, trustees, managers, member of the Board of Managers or equivalent positions of such entity are owned or controlled by the **Named Insured**, directly or through one or more **Subsidiaries**;

B. Any entity while:

   1. Exactly fifty percent (50%) of the securities representing the right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers, or equivalent positions of such entity are owned, or controlled by the **Named Insured**, directly or through one or more **Subsidiaries**; and

   2. The **Named Insured**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

C. Any foundation or charitable trust while such entity is controlled by the **Named Insured**.

Coverage shall apply to a **Subsidiary** only during the time it qualifies as a **Subsidiary**.

**Wrongful Act** shall have the meaning as defined in the applicable Coverage Part.

## III. EXCLUSIONS

This insurance does not apply to **Loss** for any **Claim**:

A. <u>Pollution</u>

Based upon, arising out of or in any way related to:

The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**;

1. **Loss**, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

2. Any regulation, direction, request or order by or on behalf of a governmental authority to test for, monitor, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**.

B. Nuclear

Based upon, arising out of or in any way related to the radioactive, toxic, or explosive properties of nuclear material which includes, but is not limited to, Source Material, Special Nuclear Material and Byproduct Material as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto, and any similar provisions of any federal, state or local statutory or common law.

### IV. LIMIT OF LIABILITY

A. If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is elected, the amount stated shall be the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under one or more **Liability Coverage Parts** combined. However, any **Loss** paid under a **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the respective Coverage Part Declarations.

B. If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is not elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under each **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the respective Coverage Part Declarations.

### V. SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

Solely with respect to the **Liability Coverage Parts**, coverage shall extend to:

A. A lawful spouse or domestic partner, as defined under any applicable federal, state or local law, of an **Insured Individual** solely by reason of such person's status as spouse or domestic partner or such person's ownership interest in property which the claimant seeks as recovery from an **Insured Individual**;

B. The estate, heirs, legal representatives or assigns of an **Insured Individual** if such **Insured Individual** is deceased, legally incompetent, insolvent or bankrupt.

Coverage shall not apply to **Loss** for **Claims** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by an **Insured Individual's** spouse, domestic partner, heir, estate, legal representative or assigns.

### VI. RELATED CLAIMS

With respect to the **Liability Coverage Parts** all **Related Claims** will be considered as a single **Claim** made in the **Policy Period** or Extended Reporting Period in which the earliest of such **Related Claims** was first made or first deemed to have been made pursuant to the applicable Coverage Part. All **Related Claims** are subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest **Related Claim**.

### VII. LEGAL PROCEEDINGS

A. No individual or entity has a right under this Policy to join the **Insurer** as a party or otherwise bring us into a suit asking for damages from an **Insured** or to sue the **Insurer** on this Policy unless all of its terms have been fully complied with.

B. An individual or entity may sue us to recover on an agreed settlement or on a final judgment against an **Insured** but the **Insurer** will not be liable for damages that are not payable under the terms of this Policy or



that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**VIII.   CHANGE IN CONTROL OR EXPOSURE**

A. Acquisition of the **Named Insured**

If during the **Policy Period**:

1. Another individual, entity or group of individuals or entities acquires more than fifty percent (50%) of the assets of the **Named Insured**; or

2. Another individual, entity or group of individuals or entities acquires more than fifty percent (50%) of outstanding securities representing the right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Named Insured**;

3. The **Named Insured** consolidates or merges with another entity and the **Named Insured** is not the surviving entity; or

4. The **Named Insured** emerges from bankruptcy on an effective date stated in the plan of reorganization;

Then the applicable coverage under this Policy with respect to:

a. **Liability Coverage Parts** shall continue until the termination or expiration of the **Policy Period** but only for **Claims** for a **Wrongful Act** which occurs prior to the transaction date of such event;

b. **Non**-**Liability Coverage Parts** shall terminate as of the transaction date of such event.

The **Named Insured** shall notify the **Insurer** of such transaction as soon as practicable but no later than sixty (60) days after the effective date of the transaction, and provide such additional information as the **Insurer** requires.

B. Cessation of Subsidiaries

If before or during the **Policy Period** an **Insured Entity** ceases to be a **Subsidiary** then coverage for such **Subsidiary** and its **Insureds** shall continue until termination or expiration of this **Policy Period** but only for **Claims** for  **Wrongful Acts** prior to the date such entity ceased to be a **Subsidiary**.

C. Acquisition of Another Organization

If before or during the **Policy Period** the **Insured Entity** acquires the voting rights of another entity such that the acquired entity becomes a **Subsidiary,** then coverage for such **Subsidiary** and its **Insureds** shall be provided but only for **Claims** for **Wrongful Acts** after the date such entity became a **Subsidiary**.

If during the **Policy Period** the **Insured Entity** acquires another entity and at the time of such acquisition the entity becomes a **Subsidiary** (or would have but for its absorption into the **Insured**) and the total assets of the acquired entity exceeded twenty five percent (25%) of the **Insured Entity** as of the beginning of the **Policy Period**, then the **Named Insured** shall agree to any amendments to the terms of this Policy, including, but not limited to, any additional premium the **Insurer** may require.

**IX.   SUBROGATION**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, including the execution of such documents necessary to enable



the **Insurer** to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, and shall do nothing to prejudice or compromise such rights without the **Insurer's** express written consent.

**X.     OTHER INSURANCE**

If other valid and collectible insurance (other than a policy that is issued specifically as excess of this Policy) is available to the **Insured** for loss covered under this Policy, then the insurance provided by this Policy shall be excess of such other insurance regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

**XI.     TERRITORY**

This Policy applies anywhere in the world.

**XII.     TERMINATION OF POLICY**

This Policy will terminate upon:

A.   Twenty (20) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer** based upon nonpayment of premium, unless such premium is paid within such twenty (20) day period;

B.   Receipt by the **Insurer** of written notice of termination from the **Named Insured**;

C.   Expiration of the **Policy Period**; or

D.   A date agreed upon by the **Insurer** and the **Named Insured.**

**XIII.     BANKRUPTCY**

Bankruptcy of an **Insured** shall not relieve the **Insurer** of its obligations under this Policy.

**XIV.     VALUATION AND FOREIGN CURRENCY**

All premiums, Limits, Retentions, and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of loss under this Policy is stated in a currency other than the United States of America dollars, then payment under this Policy shall be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

**XV.     ROLE OF NAMED INSURED**

By accepting this Policy, the **Named Insured** agrees that it is authorized to, and will act on behalf of all **Insureds** with respect to any rights provided under this Policy and each **Insured** agrees that the **Named Insured** shall act on its behalf with respect to all such matters.



**XVI.  TITLES AND HEADINGS**

The titles and headings in this Policy are solely for convenience and form no part of the terms and conditions of coverage.

**XVII.  CONFORMANCE TO LAW AND TRADE SANCTIONS**

Coverage under this Policy does not apply to the extent trade, economic sanction, insurance or other laws or regulations prohibit the **Insurer** from providing insurance.  The terms of this Policy which are in conflict with the statutes of the state in which this Policy is issued are amended to conform to those statutes.

**XVIII.  NOTICE**

A.  Notice to the **Insurer** of any **Claim**, Compliance Resolution Notice or circumstances under any **Liability Coverage Part** or any notice under any **Non-Liability Coverage Part** shall be deemed notice under the Policy in its entirety

B.  All notices to the **Insurer** under this Policy of any **Claim**, Compliance Resolution Notice or circumstances under any **Liability Coverage Part** or notice under any **Non-Liability Coverage Part** shall be deemed notice under the Policy in its entirety and shall be given in writing to the **Insurer** at the address shown in Item 7. of the Policy Declarations.

**XIX.  RESCINDABILITY**

The **Insurer** shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.



# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site: http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.


# CUSTOMER NOTICE OF PRIVACY POLICY AND PRODUCER COMPENSATION PRACTICES DISCLOSURES—PRIVACY POLICY DISCLOSURE

### *Collection of Information*

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

### *Disclosure of Information*

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### *Safeguards to Protect Your Personal Information*

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### *Internal Access to Information*

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### *Consumer Reports*

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.



### *Access to Information*

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### *Correction of Information*

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### *Our Commitment to Privacy*

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### *Further Information*

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.



POLICYHOLDER NOTICE

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.

Form  904 7107 PHN  Ed. 12/14                                                                                                Page 3 of 3



# DEFENSE WITHIN LIMITS ACKNOWLEDGEMENT

I UNDERSTAND AND ACKNOWLEDGE THAT THE ATTACHED POLICY CONTAINS A DEFENSE WITHIN LIMITS PROVISION WHICH MEANS THAT DEFENSE EXPENSES WILL REDUCE THE LIMITS OF INSURANCE AND MAY EXHAUST THOSE LIMITS COMPLETELY; SHOULD THAT OCCUR, THE NAMED INSURED WILL BE LIABLE FOR ANY FURTHER LEGAL DEFENSE COSTS, LOSS OR DAMAGES.

Please sign below to acknowledge that you, as the authorized representative of the Named Insured, have read and understand the above statement. This form is a part of the application and will become a part of the Policy, if one is issued.

Named Insured_____

Signature_____ Date _____

Print Name and Title _____



# MISSOURI DECLARATIONS DISCLOSURE

### TO MISSOURI INSUREDS:

ANY **DEFENSE EXPENSE(S)** PAID UNDER THIS POLICY WILL REDUCE THE AVAILABLE LIMITS OF INSURANCE AND MAY EXHAUST THEM COMPLETELY. **DEFENSE EXPENSE(S)** MEANS ALL EXPENSES THE **INSURER** INCURS OR AUTHORIZES IN WRITING IN THE INVESTIGATION, ADJUSTMENT, DEFENSE OR APPEAL OF A **CLAIM**. THESE EXPENSES MAY INCLUDE FEES CHARGED BY A LAWYER, MEDIATOR OR ARBITRATOR. **DEFENSE EXPENSE(S)** DO NOT INCLUDE SALARIES, WAGES, FEES, OVERHEAD OR BENEFIT EXPENSES ASSOCIATED WITH THE **INSURER'S** EMPLOYEES, OR WITH ANY **INSURED** OR **INSURED'S** EMPLOYEES.

IF AN ENDORSEMENT ADDING A SEPARATE **DEFENSE EXPENSE** LIMIT IS ATTACHED TO THIS POLICY**,** THIS NOTICE WILL NOT APPLY UNTIL THE SEPARATE LIMIT FOR **DEFENSE EXPENSES** HAS BEEN EXHAUSTED.



POLICYHOLDER NOTICE

# NOTICE CONCERNING POLICYHOLDER RIGHTS IN AN INSOLVENCY UNDER THE MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION

A. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the "Act"), if the **Insurer** is a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the "Association"), the Association will pay **Claims** covered under the Act if the **Insurer** becomes insolvent.

B. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

1. **Claims** covered by the Association do not include a **Claim** by or against a **Named Insured** of an insolvent **Insurer**, if the **Named Insured** has a net worth of more than $25 million on the later of the end of the **Named Insured's** most recent fiscal year or December 31st of the year next preceding the date the **Insurer** becomes insolvent; provided that a **Named Insured's** net worth on such date shall be deemed to include the aggregate net worth of the **Named Insured** and all of its affiliates as calculated on a consolidated basis. If the **Named Insured** prepares an annual report to shareholders, or an annual report to management reflecting net worth, then such report for the fiscal year immediately preceding the date of insolvency of the **Insurer** will be used to determine net worth.

2. Payments made by the Association for covered **Claims** will include only that amount of each **Claim** which is less than $300,000.

   However, the Association will not:

   a. Pay an amount in excess of the applicable limit of insurance of the Policy from which a **Claim** arises;

   b. Pay for any amount that has been awarded as punitive or exemplary damages; or

   c. Return to a **Named Insured** any unearned premium in excess of $25,000.

These limitations have no effect on the coverage the **Insurer** will provide under this Policy.

Form  904 7116MO PHN  Ed. 01/14                                          Page 1 of 1

Case 4:24-cv-00730-SRB     Document 1-1     Filed 11/05/24     Page 15 of 98



Coverage Part: Common Policy Terms and Conditions          Endorsement Number: 1

Issued To: Bela Flor Nurseries, Inc.                       Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company                   Effective Date: 04/15/2024

# SCHEDULE OF FORMS

To be attached to and form part of the Policy Number listed above.

Common Policy Terms and Conditions

| | | |
|---|---|---|
| 904-1002 | 05/18 | Common Policy Declarations |
| 904-1001 | 10/15 | Common Policy Terms And Conditions |
| 904-7100 PHN | 01/14 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| 904-7107 PHN | 12/14 | Privacy Policy And Producer Compensation Practices Disclosures-Privacy Disclosure |
| 904-7109 PHN | 01/14 | Defense Within Limits Acknowledgement |
| 904-7115MO PHN | 01/14 | Missouri Declarations Disclosure |
| 904-7116MO PHN | 01/14 | Notice Concerning Policyholder Rights In An Insolvency Under The Missouri Property And Casualty Insurance Guaranty Association |
| 904-1025 | 01/14 | Schedule Of Forms |
| 904-1037 | 04/17 | Multiyear Policy Period - Three Years |
| 904-3003 | 01/14 | Addition of Insured Entity Prior and Pending Proceeding Exclusion |
| 904-4056 | 01/14 | Past Acts Exclusion |
| 904-4107 | 01/14 | Delete Nuclear Exclusion |
| 904-4108 | 01/14 | A-Side Pollution Exclusion Carveback |
| 904-4176 | 09/18 | Amend Pollution Exclusion (D&O Side A, Securities Claims And Fiduciary Plan Investments) |
| 904-5070 | 01/14 | Predetermined Run-Off |
| 904-5071 | 01/14 | Separate Defense Expense Limit All Liability Coverage Parts |
| 904-5099 | 10/15 | Amend Acquisition Of Another Organization |
| 904-6041 | 03/17 | Missouri State Amendatory Endorsement |

Directors & Officers and Entity Liability Coverage Part

| | | |
|---|---|---|
| 905-1002 | 01/14 | Directors & Officers And Entity Liability Coverage Part Declarations |
| 905-1001 | 10/15 | Directors & Officers And Entity Liability Coverage Part |
| 905-7200 PHN | 12/20 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 905-7205 PHN | 12/20 | Policyholder Disclosure Notice Pursuant to the Terrorism Risk Insurance ACT |
| 905-1102 | 01/14 | Crisis Management Expense Coverage |
| 905-1103 | 01/15 | Emergency Real Estate Consulting Fee Supplemental Coverage |
| 905-1104 | 01/14 | Executive Officer Replacement Expenses Supplemental Coverage |
| 905-1107 | 01/14 | Temporary Meeting Space Supplemental Coverage |
| 905-1109 | 01/14 | Workplace Violence Counseling Supplemental Coverage |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| 905-1187 | 09/18 | Personal Interview Expenses With Optional Reporting |
| 905-2012 | 09/18 | Automatic Retiree Extended Reporting |
| 905-3019 | 01/14 | Advisory Board Members |
| 905-3094 | 09/18 | Employed Lawyers Professional Services Coverage |
| 905-4051 | 01/14 | Amend Insured Vs. Insured Exclusion Former Insured Individuals |
| 905-4054 | 01/14 | Delete Antitrust Exclusion |
| 905-4068 | 01/14 | Amend Bodily Injury Or Property Damage Exclusion Corporate Manslaughter |
| 905-4128 | 10/15 | Employment Practices Exclusion (All Insuring Agreements) |
| 905-4148 | 09/16 | Product Defect/Warranty/Advertising Exclusions For All Insuring Agreements |
| 905-4155 | 04/17 | Contract Exclusion Shareholder Carveback |
| 905-4184 | 09/18 | Amend Conduct Exclusion |
| 905-4185 | 09/18 | Limited Product Defect Exclusion Defense Carveback |
| 905-4189 | 11/19 | Biometric Information Exclusion |
| 905-5012 | 01/14 | Amend Consent To Settle (Delete "Hammer Clause") |
| 905-5019 | 01/14 | Purchase Run-Off Period Modified Limit Of Liability |
| 905-5076 | 01/15 | Cap On Losses From Certified Acts Of Terrorism Endorsement |
| 905-5135 | 09/18 | Conditional Waiver Of Consent To Settle |
| 905-5137 | 09/18 | Amend Reporting Scheduled Individuals Aware And Number Of Days |

Employment Practices Liability Coverage Part

| 906-1002 | 01/14 | Employment Practices Liability Coverage Part Declarations |
| 906-1001 | 10/15 | Employment Practices Liability Coverage Part |
| 906-7111 PHN | 01/14 | Important Policyholder Information Employment Practices Risk Management Hotline |
| 906-1116 | 01/14 | Wage & Hour Claims Defense Expense Sublimit |
| 906-1149 | 01/14 | Immigration Investigation Defense Expense Sublimit |
| 906-1159 | 10/15 | Workplace Violence Expense (Sublimit) |
| 906-3097 | 10/15 | Amend Definition Of Third Party |
| 906-4189 | 11/19 | Biometric Information Exclusion |
| 906-5012 | 01/14 | Amend Consent To Settle (Delete "Hammer Clause") |
| 906-5018 | 01/14 | Purchase Run-Off Period |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



 Endorsement

| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 2 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## MULTIYEAR POLICY PERIOD-THREE YEARS

In consideration of the premium charged it is agreed that:

A.  Item 2. of the Policy Declarations is deleted and replaced with the following:

POLICY PERIOD:

| | Inception Date: | Expiration Date: |
|---|---|---|
| Policy Year 1: | 06/30/2022 | 06/30/2023 |
| Policy Year 2: | 06/30/2023 | 06/30/2024 |
| Policy Year 3 | 06/30/2024 | 06/30/2025 |

(12:01 AM standard time at the address shown in Item 1.)

B.  Section II. Definitions, the definition of **Policy Period** is deleted and replaced with the following:

**Policy Period** means the period of time from the inception date of **Policy Year** 1 to the expiration date of **Policy Year** 3 as shown in Item 2. of the Policy Declarations, or the effective date of cancellation or termination of this policy, whichever is earlier.

The following definition is added to Section II. Definitions:

**Policy Year** means:

A.  The period of one year between the inception date and the expiration date as set forth in Item 2 of the Policy Declarations;

B.  The time between the inception date set forth in Item 2 of the Policy Declarations and the effective date of cancellation or termination of this policy if such time period is less than one year; and

C.  With respect to any **Liability Coverage Parts** added to this policy after the inception date set forth in Item 2. of the Policy Declarations, the time between the inception date of such **Liability Coverage Part** and the expiration date or the effective date of cancellation or termination of this Policy, whichever is earlier.

C.  Section IV. Limit of Liability, paragraphs A. and B. are deleted and replaced by the following:

A.  If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is elected, the amount stated shall be the **Insurer's** maximum liability for all **Loss** during the **Policy Period** for each **Policy Year** arising from a **Claim** or **Related Claims** under one or more **Liability Coverage Parts** combined.  However, any **Loss** paid under a **Liability Coverage Part** in a **Policy Year** shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the respective Coverage Part Declarations for that **Policy Year**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





# Endorsement

Coverage Part: Common Policy Terms and Conditions

Issued To: Bela Flor Nurseries, Inc.

Issued By: The Hanover Insurance Company

Endorsement Number: 2

Policy Number: LHC-A866791-09

Effective Date: 04/15/2024

---

    B.  If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is not elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** for each **Policy Year** arising from a **Claim** or **Related Claims** under each **Liability Coverage Part** in a **Policy Year** shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the respective Coverage Part Declarations for that **Policy Year**.

  D.  Section IV. Limit of Liability is amended to include the following:

The Limit of Liability applicable to any **Liability Coverage Part** provided under this Policy, and the Combined Policy Aggregate Limit of Liability shown in Item 3. of the Policy Declarations (if any), will apply separately to each **Policy Year** during the **Policy Period** as shown in Item 2. of the Policy Declarations. Any applicable limits of insurance on the inception date for **Policy Year** 1 will be fully reinstated in the same amounts on the inception date of **Policy Year** 2 regardless of whether or not any remaining limits of insurance are still available on the expiration date of **Policy Year** 1. And any applicable limits of insurance on the inception date for **Policy Year** 2 will be fully reinstated in the same amounts on the inception date of **Policy Year** 3 regardless of whether or not any remaining limits of insurance are still available on the expiration date of **Policy Year** 2.

With regard to any Extended Reporting Period applicable to this Policy, the **Insurer's** maximum liability for all **Loss** from **Claims** made during such Extended Reporting Period shall not exceed the remaining Maximum Aggregate Limit of Liability stated in Item 3. of the applicable Coverage Part Declarations or the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations, if any, for the last **Policy Year** in effect at the time of the expiration, cancellation or termination of the **Liability Coverage Part.**

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Endorsement

| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 3 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# ADDITION OF INSURED ENTITY PRIOR AND PENDING PROCEEDING EXCLUSION

In consideration of the premium charged it is agreed that:

Section II., the Definition of **Insured Entity**, is amended to include the entity(ies) listed below. However, this insurance does not apply to **Loss** for any **Claim** based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against, or any order, decree or judgment entered prior to or on the Effective Date.

| Entity(ies) | Effective Date |
|---|---|
| MFAF Holdings, LLC | 03/06/2015 |
| SMB Holdings, LLC | 03/06/2015 |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Endorsement

| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 4 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# PAST ACTS EXCLUSION

In consideration of the premium charged it is agreed that:

Section III. Exclusions is amended to include:

This insurance does not apply to **Loss** for any **Claim** based upon, arising out of or in any way related to any **Wrongful Act** which occurred on or before 03/06/2015.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 5 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# DELETE NUCLEAR EXCLUSION

In consideration of the premium charged it is agreed that:

Section III. B. Nuclear Exclusion is deleted in its entirety.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

 

Endorsement

Coverage Part: Common Policy Terms and Conditions

Endorsement Number: 6

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

# A-SIDE POLLUTION EXCLUSION CARVEBACK

In consideration of the premium charged it is agreed that:

Section III. A. Pollution Exclusion is deleted and replaced with the following:

A. Pollution

Based upon, arising out of or in any way related to:

1. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**;

2. **Loss**, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

3. Any regulation, direction, request or order by or on behalf of a governmental authority to test for, monitor, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**.

However this Exclusion shall not apply to **Loss** covered under Insuring Agreement I. A. of the Directors & Officers and Entity Liability Coverage Part.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 7 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## AMEND POLLUTION EXCLUSION
## (D&O SIDE A, SECURITIES CLAIMS AND FIDUCIARY PLAN INVESTMENTS)

In consideration of the premium charged it is agreed that:

A.  Section III.A. of Exclusions is deleted and replaced with the following:

    A.  <u>Pollution</u>

    Based upon, arising out of or in any way related to:

    1.  The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**;

    2.  **Loss**, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

    3.  Any regulation, direction, request or order by or on behalf of a governmental authority to test for, monitor, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**.

    However, this Exclusion shall not apply to:

    a.  Any **Claim** involving the purchase or sale of securities of an **Insured Entity** or any interest in such securities;

    b.  Any **Security Holder Derivative Demand** or **Security Holder Derivative Action**;

    c.  **Loss** covered under Insuring Agreement I.A. of the Directors & Officers and Entity Liability Coverage Part; or

    d.  Any **Claim** arising from the diminution or loss of value of the investments of any **Benefit Plan** covered under the Fiduciary Liability Coverage Part.

B.  Section II. Definitions is amended to include:

    **Security Holder Derivative Demand** shall have the meaning as defined in the Directors & Officers and Entity Liability Coverage Part.

    **Security Holder Derivative Action** shall have the meaning as defined in the Directors & Officers and Entity Liability Coverage Part.

    **Benefit Plan** shall have the meaning as defined in the Fiduciary Liability Coverage Part.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement



| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 8 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## PREDETERMINED RUN-OFF

In consideration of the premium charged it is agreed that:

Section VIII. A. of Change in Control or Exposure is amended to include:

In the event of a change in control of the **Named Insured** pursuant to this Section VIII. A. Acquisition of the **Named Insured** ("Transaction"), the **Named Insured** shall have the right, upon payment of an additional appropriate percentage of the annualized premium, not to exceed the percentage for the applicable period as displayed in the table below, to an extension of coverage under the Policy for a **Claim** first made and reported during the additional period ("Run-Off Period") after the Transaction but, only with respect to any **Wrongful Act** occurring prior to the Transaction and otherwise covered by this Policy.

Run-Off Period:

| | |
|---|---|
| 1 Year | 75% additional premium |
| 2 Years | 100% additional premium |
| 3 Years | 115% additional premium |
| 4 Years | 135% additional premium |
| 5 Years | 150% additional premium |
| 6 Years | 175% additional premium |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




Endorsement

| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 9 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# SEPARATE DEFENSE EXPENSE LIMIT
# ALL LIABILITY COVERAGE PARTS

In consideration of the premium charged it is agreed that:

A.  Item 3. of the Policy Declarations is amended to include:

Additional Separate Defense Expense Limit:                    $1,000,000

B.  Section IV. Limit of Liability is amended by adding the following:

One single additional limit of liability for **Defense Expenses** shall be provided for all **Liability Coverage Parts** applicable to this Policy as indicated in Item 4. of the Policy Declarations.  The amount of such Additional Separate Defense Expense Limit shall be the Limit of Liability indicated above, during the **Policy Period**, which shall be in addition to, and not part of, the Maximum Aggregate Liability shown in Item 3. of the respective Coverage Part Declarations and the Combined Policy Aggregate Limit of Liability, if purchased, shown in Item 3. of the Policy Declarations.

The Additional Separate Defense Expense Limit is applicable to all **Liability Coverage Parts** purchased and payment of **Defense Expenses** under one **Liability Coverage Part** shall reduce the amount of the Additional Separate Defense Expense Limit available under all other **Liability Coverage Parts**.  Payment of **Defense Expenses** under any **Liability Coverage Part** shall first reduce the Additional Separate Defense Expense Limit above and, if exhausted, any further payment of **Defense Expenses** by the **Insurer** under such **Liability Coverage Part** shall then reduce the Maximum Aggregate Limit of Liability shown in Item 3. of the respective Coverage Part Declarations and the Combined Policy Aggregate Limit of Liability, if purchased, shown in Item 3. of the Policy Declarations.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Coverage Part: Common Policy Terms and Conditions          Endorsement Number: 10

Issued To: Bela Flor Nurseries, Inc.                       Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company                   Effective Date: 04/15/2024

## AMEND ACQUISITION OF ANOTHER ORGANIZATION

In consideration of the premium charged it is agreed that:

The second paragraph of Section VIII.C. Acquisition of Another Organization is deleted in its entirety.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Common Policy Terms and Conditions | Endorsement Number: 11 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# MISSOURI STATE AMENDATORY ENDORSEMENT

In consideration of the premium charged it is agreed that:

A.  Section XII. Termination of Policy is deleted and replaced by:

   **XII.  TERMINATION / RENEWAL OF POLICY**

   A.  This Policy will terminate upon:

   1.  Ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer** based upon nonpayment of premium, unless such premium is paid within such ten (10) day period;

   2.  Thirty (30) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer,** based upon:

      a.  Fraud or material misrepresentation affecting the Policy or in the presentation of a **Claim** thereunder or a violation of any of the terms or conditions of the Policy;

      b.  Changes in conditions after the effective date of the Policy which have materially increased the hazards originally insured;

      c.  Insolvency of the **Insurer**; or

      d.  The **Insurer** involuntarily loses reinsurance for the Policy;

   3.  Sixty (60) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer,** based upon any other reason;

   4.  Receipt by the **Insurer** of written notice of termination from the **Named Insured**;

   5.  Expiration of the **Policy Period**; or

   6.  A date agreed upon by the **Insurer** and the **Named Insured.**

   B.  This Policy may be non-renewed by the **Insurer** by sending written notice to the **Named Insured** not less than sixty (60) days prior to the expiration of the **Policy Period.**

   C.  Notice of termination or nonrenewal will be mailed to the **Named Insured** by first class mail to the address shown in the Policy, with a statement of the specific reason for such termination or nonrenewal. Proof of mailing shall be sufficient proof of notice.

   D.  In the case of termination or nonrenewal, the **Named Insured** shall have the right to receive within thirty (30) days of written request, a statement of the **Claims** history for this Policy for the three (3)

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


Coverage Part: Common Policy Terms and Conditions

Endorsement Number: 11

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

years prior to the date of the termination or nonrenewal.

E. Notice of renewal with an increase in premium of twenty five percent (25%) or more for a reason other than an increase in the hazard insured**,** will be mailed to the **Named Insured** and the agent of record by first class mail to the mailing addresses shown in the Policy, not less than sixty (60) days prior to the expiration of the **Policy Period**.

B. Section XVIII. Notice is amended to include:

No **Claim** will be denied based upon the **Insured's** failure to provide notice within any specified time, unless this failure operates to prejudice the rights of the **Insurer**.

---

**INSURER'S CONTACT INFORMATION**

Should any **Insured** have any questions regarding this Policy, the **Insured** can contact the **Insurer** at:

The Hanover Insurance Company
440 Lincoln Street
Worcester, Massachusetts 01653
1-800-853-0456

---

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



# Private Company Advantage
## Directors & Officers and Entity Liability Coverage Part

NOTICE: THIS COVERAGE PART IS WRITTEN ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, THIS COVERAGE PART APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMITS OF LIABILITY CAN BE COMPLETELY EXHAUSTED BY DEFENSE EXPENSES AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO LIABILITY FOR DEFENSE EXPENSES OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.

PLEASE READ THE ENTIRE POLICY CAREFULLY.

| Policy Number | The Hanover Insurance Company |
|---|---|
| LHC-A866791-09 | 440 Lincoln Street |
| | Worcester, Massachusetts 01653 |
| | (A Stock Insurance Company, herein called the **Insurer**) |

**Item 1.  NAMED INSURED**

Bela Flor Nurseries, Inc.
28615 SE Outer Rd.
Harrisonville, MO 64701

**Item 2.  POLICY PERIOD**

Inception Date: 06/30/2022   Expiration Date: 06/30/2025
(12:01 AM standard time at the address shown in Item 1)

**Item 3.  LIMITS OF LIABILITY FOR THIS COVERAGE PART**

| | |
|---|---|
| Maximum Aggregate Limit of Liability: | $1,000,000 |
| Additional Limit of Liability for Executives: | $1,000,000 |
| Security Holder Derivative Demand Investigations Limit: | $500,000 |

**Item 4.  RETENTIONS**

| | |
|---|---|
| Insuring Agreement I. A. | |
| Individual Non-Indemnified Liability | $0 |
| | |
| Insuring Agreement I. B. | |
| Individual Indemnified Liability | $15,000 each **Claim** |
| | |
| Insuring Agreement I. C. | |
| Corporate Entity Liability | $15,000 each **Claim** |
| | |
| Security Holder Derivative Demand Investigation | |
| Coverage | $15,000 each **Claim** |



## D&O Declarations

**Item 5.**     **PRIOR & PENDING PROCEEDINGS DATES**

     Insuring Agreement I. A. and I. B.          03/06/2015

     Insuring Agreement I. C.          03/06/2015

**Item 6.**     **EXTENDED REPORTING PERIOD**

     Percentage of Annualized Premium:          100%

     Additional Period:          12      Months

**Item 7.**     **PREMIUM FOR COVERAGE PART**          **$8,162.00**


We have caused this Policy to be signed by our President and Secretary and countersigned where required by a duly authorized agent of the Company.


*[signature]*

John C. Roche, President

*[signature]*

Charles F. Cronin, Secretary



*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.*

In consideration of the premium paid, in reliance upon the statements in the **Application** and subject to the Declarations, limitations, conditions, definitions and other provisions of this Policy, including endorsements hereto, the **Insurer** and the **Insureds** agree as follows:

## I.  INSURING AGREEMENTS

### A.  Individual Non-Indemnified Liability

The **Insurer** will pay on behalf of each **Insured Individual**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period if applicable, except for **Loss** which the **Insured Entity** pays to or on behalf of the **Insured Individual** as indemnification.

### B.  Individual Indemnified Liability

The **Insurer** will pay on behalf of the **Insured Entity**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period if applicable, but only to the extent the **Insured Entity** indemnifies the **Insured Individual** for such **Loss**.

### C.  Corporate Entity Liability

The **Insurer** will pay on behalf of an **Insured Entity**, **Loss** which the **Insured Entity** is legally obligated to pay due to a **Claim** first made against the **Insured Entity** during the **Policy Period**, or the Extended Reporting Period if applicable.

### D.  Security Holder Derivative Demand Investigation Coverage

The **Insurer** will pay **Investigative Costs** on behalf of the **Insured Entity** resulting from any **Security Holder Derivative Demand** first made during the **Policy Period**, or the Extended Reporting Period if applicable, in connection with the investigation or evaluation of any **Security Holder Derivative Demand** to determine whether it is in the best interest of the **Insured Entity** to prosecute the claims alleged in a **Security Holder Derivative Demand.**

## II.  EXTENDED REPORTING PERIOD

A.  If the **Insurer** or the **Named Insured** terminates or does not renew this Coverage Part, other than termination by the **Insurer** for nonpayment of premium, then the **Named Insured** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 6. of the D&O Declarations beginning on the effective date of the termination or non-renewal of this Coverage Part. The **Named Insured** must provide a written request for the Extended Reporting Period including payment of the additional premium, as set forth in Item 6. of the D&O Declarations, within thirty (30) days following the effective date of the termination or non-renewal of this Coverage Part.  Additional premium paid shall be deemed fully earned as of the first day of the Extended Reporting Period and the Extended Reporting Period may not be cancelled.

B.  If an Extended Reporting Period is purchased, then coverage as provided by this Coverage Part shall be extended to **Claims** first made during such Extended Reporting Period and reported pursuant to Section IX. Reporting of this Coverage Part, but only if such **Claims** are for **Wrongful Acts** which occurred entirely prior to the effective date of the termination or non-renewal of this Coverage Part.

Case 4:24-cv-00730-SRB     Document 1-1     Filed 11/05/24     Page 32 of 98



**III.    DEFINITIONS**

**Claim** means:

A.   With respect to Insuring Agreements I.A. and I.B., any:

   1.   Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;

   2.   Civil proceeding commenced by the service of a complaint or similar pleading;

   3.   Criminal proceeding commenced by the filing of charges;

   4.   Formal administrative or regulatory proceeding, including a Wells Notice, commenced by the filing of charges, formal investigative order or similar document;

   5.   Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document; or

   6.   Official request for **Extradition**;

   against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom;

   7.   Service of a subpoena on an **Insured Individual** identified by name pursuant to a civil, criminal, administrative or regulatory investigation, including when such **Insured Individual** is served with a target letter or similar document; or

   8.   Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in A.1. through A.7. above;

B.   With respect to Insuring Agreement I.A. and solely for **Defense Expenses**, any subpoena or other similar written request served on an **Insured Individual** compelling witness testimony or document production in connection with the matters described in A.1. through A.7. above or with any equivalent action against an **Insured Entity** or **Outside Entity**.

C.   With respect to Insuring Agreement I.C., any:

   1.   Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;

   2.   Civil proceeding commenced by the service of a complaint or similar pleading;

   3.   Criminal proceeding commenced by the filing of charges;

   4.   Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document; or

   5.   Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

   against an **Insured Entity** for a **Wrongful Act**, including any appeal therefrom; or

   6.   Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in C.1. through C.5. above;

**Defense Expenses** means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the **Insurer** or the **Insured** (other than regular or overtime wages, salaries, fees or benefits of **Insured Individuals**) in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds regarding such **Claim**.

**Extradition** means any formal process initiated by a local, state or national government against an **Insured Individual** to compel the **Insured Individual** to appear for trial or otherwise answer any criminal accusation.

**Financial Insolvency** means, with respect to an **Insured Entity** or **Outside Entity**:

Case 4:24-cv-00730-SRB     Document 1-1     Filed 11/05/24     Page 33 of 98



A. The appointment of a receiver, conservator, liquidator, trustee or similar official;

B. Such **Insured Entity** or **Outside Entity** becoming a debtor in possession under the United States bankruptcy law; or

C. The inability of such **Named Insured** or **Outside Entity** to financially indemnify an **Insured Individual**.

**Insured Individual** means any past, present or future **Executive** or employee (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** or in an **Outside Capacity**.

**Insured** means any **Insured Individual** or **Insured Entity**.

**Investigative Costs** means reasonable and necessary costs, charges, fees, including but not limited to attorneys and experts' fees, and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Individuals**) incurred by the **Insured Entity**.

**Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:

A. Monetary judgments, awards or settlements, pre-judgment and post-judgment interest and compensatory damages;

B. Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the **Insured**, the **Insurer**, or to the **Claim** giving rise to such damages; or

C. Civil fines or penalties assessed against an **Insured Individual**, including civil penalties assessed against an **Insured Individual** pursuant to the Foreign Corrupt Practices Act (15 U.S.C. 78dd-2(g)(2)(B)), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines and penalties are assessed.

However, **Loss** does not include:

1. Any amounts which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress for non-monetary damages including injunctive relief;

2. Any amount deemed uninsurable by law;

3. Taxes, except a tax imposed upon an **Insured Individual** in connection with the bankruptcy, receivership, conservatorship or liquidation of an **Insured Entity** but only if:

   a. Such tax is insurable under the law pursuant to which this Coverage Part is construed; and

   b. An **Insured Individual** is not indemnified for such tax by an **Insured Entity** or any other person or organization.

4. **Investigative Costs** (other than costs arising from a **Security Holder Derivative Demand**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not a **Claim** even if such amount also benefits the defense of a covered **Claim** or such action, proceeding or demand that subsequently gives rise to a **Claim**;

5. Any amount which represents or is substantially equivalent to an increase in the consideration paid by an **Insured Entity** in connection with its purchase of any securities or assets; or

6. Any amount not indemnified by the **Insured Entity** for which an **Insured Individual** is absolved from payment by reason of any covenant, agreement or court order.

**Outside Capacity** means service by an **Insured Individual** as any director, officer, trustee, regent, governor, manager or member of the Board of Managers including any equivalent executive position of any of the foregoing,

Case 4:24-cv-00730-SRB    Document 1-1    Filed 11/05/24    Page 34 of 98


in an **Outside Entity**, but solely during the time that such service is with the knowledge and express consent of an **Insured Entity**.

**Outside Entity** means:

A.  Any nonprofit entity described in sections 501(c)3; 501(c)4; 501(c)7; 501(c)10 of the Internal Revenue Code of 1986, as amended; or

B.  Any other entity, partnership, joint venture or organization scheduled by endorsement to this Policy.

**Policy Period** means the period of time from the inception date shown in Item 2. of the D&O Declarations to the earlier of the expiration date shown in Item 2. of the D&O Declarations or the effective date of termination of this Policy or Coverage Part.

**Professional Services** means any service performed for others whether or not for a fee, consideration or other emolument.

**Related Claims** means all **Claims** based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same series of facts, circumstances, situations, transactions, results, damages, or events.

**Related Wrongful Acts** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or decision.

**Security Law** means the Securities Act of 1933; Securities Exchange Act of 1934; Investment Act of 1940; any state "Blue Sky" securities law or any other federal, state or local securities law including amendments thereto; and any similar federal, state, local or common law, including any rules and regulations promulgated under it.

**Security Holder Derivative Action** means any **Claim** brought on behalf of, or in the name or the right of the **Insured Entity** by one or more security holders of the **Insured Entity** in their capacity as such, if any **Claim** is brought and maintained without the assistance, participation or solicitation of any **Executive**.

**Security Holder Derivative Claim** means any **Claim** brought on behalf of an **Insured Entity** by one or more security holders of the **Insured Entity** in their capacity as such but only if such **Claim** is brought without the assistance, participation or solicitation of any **Executive**, member of the board of directors or board of managers including any equivalent position thereof.

**Security Holder Derivative Demand** means any written demand by one or more security holders of an **Insured Entity** without the assistance, participation or solicitation of any **Executive**, upon the board of directors or board of managers of such **Insured Entity**, to bring a civil proceeding in a court of law against any **Executive** for a **Wrongful Act** by an **Executive**.

**Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by:

A.  With respect to Insuring Agreements I.A. and I.B, an **Insured Individual** in his or her capacity as such or any other matter claimed against an **Insured Individual** solely in his or her status as such; or

B.  With respect to Insuring Agreement I.C., an **Insured Entity**.

All **Related Wrongful Acts** shall be considered a single **Wrongful Act** and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

IV.   **EXCLUSIONS**

A.  Exclusions Applicable to All Insuring Agreements



This insurance does not apply to **Loss** for any **Claim**:

1. <u>Prior Notice</u>

   Based upon, arising out of or in any way related to any **Claim**, **Wrongful Act**, investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice accepted under any similar policy of which this Policy is a direct or indirect renewal or replacement.

2. <u>Prior & Pending Proceedings</u>

   Based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against any **Insured**, or any order, decree or judgment entered prior to or on the Prior & Pending Proceedings Date set forth in Item 5. of the D&O Declarations.

3. <u>Conduct</u>

   Based upon, arising out of or in any way related to:

   a. Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or

   b. An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

   However, this exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

4. <u>Bodily Injury or Property Damage</u>

   For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of property that is not physically damaged; or for bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual.

5. <u>ERISA</u>

   For any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the English Pension Scheme Act 1993 or the English Pensions Act 1995, including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Health Insurance Portability and Accountability Act of 1996, all as amended, and any similar federal, state, local or common law or statutory law anywhere in the world, including any rules and regulations promulgated thereunder.

6. <u>Insured vs. Insured</u>

   Brought by or on behalf of any **Insured**, however this exclusion does not apply to:

   a. Any **Claim**:

      1) Made and maintained independently of and without the solicitation, assistance, participation or intervention of any **Executive**;

      2) Brought by an **Insured Individual** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this Policy;

      3) For employment related **Wrongful Acts** against an **Insured Individual**;

      4) Brought by an employee, other than an **Executive**, in his or her capacity as a shareholder of an **Insured Entity**;



5) Brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least three (3) years;

6) Brought by a whistle blower pursuant to any federal, state, local or foreign law against an **Insured Individual**; or

b. Any **Claim** brought by an **Insured Entity** against an **Insured Individual** of an **Insured Entity** when such **Claim** is:

1) A **Security Holder Derivative Demand** or **Security Holder Derivative Claim**;

2) Brought and maintained solely outside the United States of America or Canada;

3) Brought by a receiver, liquidator, bankruptcy trustee, bankruptcy examiner, creditors committee or similar official of the **Insured Entity**;

4) Brought by the **Insured Entity** in its capacity as a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

7. Public Securities

Based upon, arising out of or in any way related to an actual or alleged violation of any **Security Law**, provided that this exclusion shall not apply to **Loss**:

a. Based upon or arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction or series of transactions that are exempt from registration under the Securities Act of 1933 including any amendments thereto or any rules or regulations promulgated thereunder;

b. Arising from a **Claim** brought by any security holder of the **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of the **Insured Entity**; or

c. For any **Wrongful Act** relating to an **Insured Entity's** preparation for any public offering including any road show presentation to potential investors or other similar presentation made by the **Insured Entity** and its **Executives** in connection with such public offering but only if such offering does not occur.

8. Outside Entity

Brought or maintained by, at the behest, or on behalf of:

a. An **Outside Entity** against an **Insured Individual** acting in an **Outside Capacity** at the time the **Claim** is first made, except with respect to a **Security Holder Derivative Claim**; or

b. A past, present, or future director, officer, manager, trustee, governor or equivalent **Executive** of the **Outside Entity** against an **Insured Individual** acting in an **Outside Capacity** at the time the **Claim** is first made, except with respect to a **Claim** for contribution or indemnity if such **Claim** would be covered under this Policy.

B. Exclusions Applicable to Insuring Agreement C. Corporate Entity Liability, Only

This insurance does not apply to **Loss** for any **Claim**:

1. Contract

Based upon, arising out of or in any way related to liability assumed through, or on account of, any express contract or agreement to which an **Insured** is a party, however this exclusion shall not apply to liability that would have attached in the absence of such contract or agreement.

2. Personal Injury


    a. For defamation of character, libel, slander, or publication of material in violation of an individual's right of privacy;

    b. For the wrongful entry or eviction or other invasion of the right of privacy; or

    c. For false arrest, wrongful detention or imprisonment, malicious prosecution, malicious use or abuse of process.

3. <u>Antitrust</u>

Based upon, arising out of or in any way related to actual or alleged price fixing, price discrimination, restraint of trade, unfair business practices, monopolistic practices or any actual or alleged violations of the Sherman Antitrust Act of 1890, the Clayton Act of 1914, and any amendments thereto, the Robinson Patman Act of 1938, the Federal Trade Commission Act of 1914 or any rules or regulations promulgated in connection with such statutes, or similar provisions of any federal, state or local statutory law or common law anywhere in the world.

4. <u>Employment Practices</u>

Based upon, arising out of or in any way related to any past, present or future actual or potential:

    a. Employment relationship including an employment-related **Wrongful Act**;

    b. Discrimination against or sexual harassment of any third party;

    c. Violation of federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act.

5. <u>Professional Services</u>

Based upon, arising out of or in any way related to the performance, provision or rendering of **Professional Services**. However this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

6. <u>Product Defect</u>

Based upon, arising out of or in any way related to any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture. However this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

7. <u>Intellectual Property</u>

Based upon, arising out of or in any way related to plagiarism or the infringement or violation of copyright, patent, trademark, service mark, trade name, trade secret or any other intellectual property rights. However this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

**V. SEVERABILITY OF EXCLUSIONS**

No conduct pertaining to any **Insured Individual** shall be imputed to any other **Insured Individual** for the purpose of determining the applicability of these exclusions. Any conduct pertaining to any past, present or future **Executive** of an **Insured Entity** shall be imputed to such **Insured Entity** and its **Subsidiaries**.



## VI.  DEFENSE AND SETTLEMENT OF CLAIMS

A.  The **Insurer** shall have the exclusive right and duty to defend any **Claim** covered by this Coverage Part even if any allegation of such **Claim** is groundless, false or fraudulent.  However, if an **Insured** is entitled under applicable law to select defense counsel, then such defense counsel shall comply with the **Insurer's** customary rates and litigation guidelines regarding billing, staffing and reporting.  The **Insurer** has no duty to defend any **Claim** or pay **Defense Expenses** for **Claims** to which this insurance does not apply.

B.  The right and duty to defend any **Claim** covered under this Coverage Part shall cease when the Maximum Aggregate Limit of Liability in Item 3. of the D&O Declarations or the Combined Policy Aggregate Limit of Liability in   Item 3. of the Policy Declarations has been exhausted by the payment of **Loss**.

C.  The **Insureds** shall provide all information in connection with any **Claim** and cooperate with the **Insurer** in the investigation, defense and settlement of any **Claim**.  However, the failure of any **Insured Individual** to give the **Insurer** such information or cooperation shall not impair the rights of any other **Insured Individual** under this Coverage Part.

D.  No **Insured** shall settle any **Claim**, voluntarily make any payment, assume any obligation, or incur any expense related to a **Claim** without the **Insurer's** consent.

E.  The **Insurer** may make any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld. If any **Insured** refuses to consent to the settlement of any **Claim** which the **Insurer** recommends and which is acceptable to the claimant, subject to the applicable Limit of Liability or Retention, the **Insurer's** liability for all **Loss** from such **Claim** shall not exceed:

1.  The amount the **Insurer** would have contributed to the settlement including **Defense Expenses** incurred up to the date of such refusal; and

2.  Eighty percent (80%) of such **Loss** in excess of the amount for which the **Claim** would have been settled.

F.  The **Insurer** shall not seek repayment from an **Insured Individual** of any **Defense Expenses** paid by the **Insurer** that are deemed uninsured pursuant to Exclusion IV. A.3. Conduct, unless the applicable determination standard set forth in such exclusion has been met.

G.  If the **Insurer** is prevented by law or otherwise unable to defend or investigate a **Claim** brought outside the United States, the **Insured** under the **Insurer's** supervision may arrange for the investigation, appointment of counsel and defense of such **Claim**.  Subject to the applicable Limit of Liability and retention, we will reimburse the **Insured** for any reasonable and necessary **Defense Expenses** for such **Claim**.

## VII.  LIMIT OF LIABILITY

Regardless of the number of **Insureds**, **Claims**, or claimants the **Insurer's** liability under this Coverage Part is limited as follows:

A.  If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under this Coverage Part, shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations or the unpaid portion of the Combined Policy Aggregate Limit of Liability stated in Item 3. of the Policy Declarations, whichever is less.

B.  If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is not elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under this Coverage Part, shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations.


C. The **Insurer's** maximum limit of liability for all **Investigative Costs** during the **Policy Period** will be the Security Holder Derivative Demand Investigations Limit stated in Item 3. of the D&O Declarations which amount is part of, and not in addition to the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations.

D. Additional Limit of Liability for Executives

1. The Additional Limit of Liability for Executives stated in Item 3. of the D&O Declarations, shall be an additional aggregate Limit of Liability, in addition to and not part of, the Maximum Aggregate Limit of Liability as set forth in Item 3. of the D&O Declarations**.**

2. The Additional Limit of Liability for Executives is available solely for **Loss** arising from any **Claim** against any **Executive** covered under Insuring Agreement I. A. of this Coverage Part.

3. The Additional Limit of Liability for Executives shall be excess of any insurance available that is specifically excess to this Policy, and such excess insurance must be completely exhausted by payment of **Loss** thereunder before we shall have any obligation to make any payment on account of the Additional Limit of Liability for Executives.

**VIII.  RETENTION**

A. The **Insurer's** liability under this Coverage Part applies only to that part of covered **Loss** which is in excess of the applicable Retentions stated in Item 4. of the D&O Declarations. Such Retentions shall be considered uninsured amounts and borne by the **Insureds** at their own risk.

B. If different parts of a **Claim** are subject to different Retentions in different Insuring Agreements the applicable Retentions will be applied separately to each part of such **Claim** but the sum of such Retentions shall not exceed the largest applicable Retention.

**IX.  REPORTING**

A. An **Insured** shall provide the **Insurer** with written notice as soon as practicable after the Chief Executive Officer, Chief Financial Officer, President, In-House General Counsel or any person with the responsibility for the management of insurance claims, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**, but in no event later than:

1. Ninety (90) days after the effective date of expiration or termination; or

2. The expiration date of the Extended Reporting Period, if applicable.

However if the **Insurer** sends written notice to the **Named Insured** stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give the **Insurer** written notice of such **Claim** prior to the effective date of such termination.

B. If during the **Policy Period**, or an applicable Extended Reporting Period, an **Insured** becomes aware of an act or circumstances that may subsequently give rise to a **Claim** and gives the **Insurer** notice of such act or circumstances, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which the circumstances were first reported to, and accepted by, the **Insurer** provided that any such subsequent **Claim** is reported to the **Insurer** in accordance with paragraph A. above.

C. An **Insured** must give to the **Insurer** the assistance, information and cooperation as the **Insurer** may require and shall include in any notice of a **Claim**, or circumstances of a potential **Claim**, a description of the **Claim** or



circumstances, the nature of the alleged **Wrongful Act**, the nature and amount of alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

D. Notice of a **Claim** or a potential **Claim**, must be provided in writing to the addresses stated in Item 7. of the Policy Declarations.

## X. ALLOCATION

If an **Insured** incurs **Loss** on account of any **Claim** and such **Claim** includes both covered and non-covered matters, coverage with respect to such **Claim** shall apply as follows:

A. One hundred percent (100%) of **Defense Expenses** on account of the **Claim** will be considered covered **Loss** provided that this shall not apply to any **Insured** for whom coverage is excluded pursuant to Exclusion IV. B. 4. Employment Practices or Section XIV. B. Representations and Severability; and

B. The **Insurer** shall fairly allocate all remaining loss that an **Insured** incurred on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to such matters.

## XI. PRIORITY OF PAYMENTS

If **Loss** arising from any **Claim** covered under this Coverage Part exceeds the remaining available Limit of Liability as stated in Item 3. of the D&O Declarations then the **Insurer** shall:

A. First pay **Loss** for such **Claim** to which Insuring Agreement I. A. applies; then

B. To the extent any remaining amount of the applicable Limit of Liability remains available, the **Insurer** will pay **Loss** for such **Claim** to which Insuring Agreements I. B. and I. C. apply.

## XII. OTHER INSURANCE AND INDEMNITY

If other valid and collectible insurance (other than a policy that is issued specifically as excess of this Coverage Part) is available to the **Insured** for **Loss** covered under this Coverage Part or if an **Insured Individual** is entitled to indemnification from an **Outside Entity** the insurance provided by this Coverage Part shall be excess of such other insurance or indemnification regardless of whether or not such insurance is primary, contributory, excess contingent or whether such indemnification is actually made.

## XIII. PRESUMPTION OF INDEMNIFICATION

If an **Insured Entity** or **Outside Entity** fails or refuses to indemnify an **Insured Individual** for **Loss** to the fullest extent permitted by the **Insured Entity's** or **Outside Entity's** by-laws or through statutory or common law, other than by reason of its **Financial Insolvency**, then any payment by the **Insurer** of such **Loss** shall be excess of the Insuring Agreement I. B. retention as set forth in Item 4. of the D&O Declarations.



**XIV.   REPRESENTATIONS AND SEVERABILITY**

A.   The declarations and statements in the **Application** for this Coverage Part are the **Insured's** representations and the **Insurer** has relied on such representations when issuing this Coverage Part.  Such representations are incorporated into and constitute part of this Coverage Part.

1.   The **Application** shall be construed as a separate application by each **Insured**.

2.   No statement in the **Application**, fact pertaining to, or knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured Individual**.

B.   If the **Application** contains any misrepresentations made with the intent to deceive or contains misrepresentations which materially affect the acceptance of the risk or the hazard assumed by the **Insurer** under this Policy, then no coverage shall be afforded for any **Claim** based upon, arising from, or in consequence, of any such misrepresentation with respect to:

1.   Any **Insured Individual** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations) or any **Insured Entity** to the extent it indemnifies any such **Insured Individual**; or

2.   Any **Insured Entity** if any past or present chief executive officer, chief financial officer or chief information officer (or any equivalent position) of the **Insured Entity** knew of such misrepresentation (whether or not such individual knew such **Application** contained such misrepresentations).

**XV.   RESCINDABILITY**

The **Insurer** shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.



THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Schedule**

| Disclosure of Premium: | |
|---|---|
| Total Terrorism Premium | **$0.00** |
| | |

### Disclosure of Terrorism Coverage Available

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

> Any act or acts that are certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charged for this coverage is provided in the Schedule above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully**.

### Disclosure of Federal Participation in Payment of Terrorism Losses

The United Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### Cap on Insurer Participation in Payment of Terrorism Losses

If the aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

### Rejection of Terrorism Insurance Coverage

☐   I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.



_____                    _____

Applicant/Policyholder Signature                    **Insurance Company**

_____                    _____

**Print Name**                                      **Quote or Policy Number**

_____

**Date**

Case 4:24-cv-00730-SRB    Document 1-1    Filed 11/05/24    Page 44 of 98



POLICYHOLDER NOTICE

THIS NOTICE IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT, AS AMENDED. THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

## POLICYHOLDER DISCLOSURE NOTICE –
## ACCEPTANCE OF TERRORISM COVERAGE AND DISCLOSURE OF PREMIUM

### Schedule

| Disclosure of Premium: | |
|---|---|
| Total Terrorism Premium | **$0.00** |
| | |
| | |

Coverage for "acts of terrorism," as defined in Section 102(1) of the Terrorism Risk Insurance Act ("Act") is included in your policy. You are hereby notified that under the Act, as amended in 2015, the definition of "act of terrorism" is:

> Any act or acts that are certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the following percentage of covered terrorism loss which exceeds the statutorily established deductible paid by the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap on Insurer Participation in Payment of Terrorism Losses**

If the aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Form 905 7205 03 16 Case 4:24-cv-000730-SRB    Document 1-1    Filed 11/05/24    Page 45 of 98    Page 1 of 1



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 1 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# CRISIS MANAGEMENT EXPENSE COVERAGE

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreements is amended to include:

Crisis Management Emergency Response Expenses

The **Insurer** shall pay for **Crisis Management Emergency Response Expenses** incurred by the **Named Insured** resulting from an **Incident** that causes a **Crisis** that occurs during the **Policy Period**. The **Crisis Management Emergency Response Expenses** must occur during the **Policy Period** and be reported to the **Insurer** no later than six (6) months after the date the **Crisis** began.

The **Insurer's** maximum limit of liability for **Crisis Management Emergency Response Expenses** is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item **3.** of the D&O Declarations and is excess of the Corporate Entity Liability Retention stated in Item 4. of the D&O Declarations.

B. For the purpose of this endorsement Section III. Definitions is amended to include:

**Crisis** means the public announcement that an **Incident** occurred on the **Named Insured's** premises or at an event sponsored by the **Named Insured**.

**Crisis Management Emergency Response Expenses** means expenses for services provided by a **Crisis Management Firm**. **Crisis Management Emergency Response Expenses** do not include:

A. Compensation, fees, benefits, overhead, charges or expenses of any **Insured**; or

B. Any expenses that are covered or reimbursable to the **Named Insured** under any other valid and collectible insurance.

**Crisis Management Firm** means any service provider hired by the **Named Insured** and approved in writing by the **Insurer**. The **Insurer's** consent will not be unreasonably withheld.

**Incident** means:

A. An accident or other event resulting in the death or **Serious Bodily Injury** to three (3) or more individuals; or

B. The accidental discharge of pollutants.

**Serious Bodily Injury** means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

C. If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability for such **Crisis Management Emergency Response**

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Coverage  Part: Directors & Officers  and Entity Liability          Endorsement  Number: 1

Issued To: Bela Flor Nurseries,  Inc.                              Policy Number:  LHC-A866791-09

Issued By: The  Hanover  Insurance  Company                        Effective  Date: 04/15/2024

**Expenses** shall be the limit shown in paragraph  A. above  or the limit, benefit  or loss available  under such other Coverage  Part or endorsement,  whichever  is greater.

All  other  terms  and  conditions  remain  unchanged.  The  title and  any  headings  in this endorsement  are  solely for convenience  and form no part of the terms and conditions of coverage.

Form  905  1102  Ed. 01/14                                                Page 2 of 2




| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 2 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## EMERGENCY REAL ESTATE CONSULTING FEE SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreements is amended to include:

Emergency Real Estate Consulting Fee Coverage

The **Insurer** shall pay the **Named Insured** for any realtor's fee or real estate consultant's fee required because the **Named Insured** must relocate due to the **Unforeseeable Destruction**, during the **Policy Period,** of the **Named Insured's** primary location.

The **Insurer's** maximum limit of liability under this provision is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations and is excess of the Corporate Entity Liability Retention stated in Item 4. of the D&O Declarations.

B.  Section III. Definitions is amended to include:

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provision of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

A.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

B.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Unforeseeable Destruction** means damage resulting from a **Certified Act of Terrorism**, fire, crash or collapse which renders the **Named Insured's** primary location(s) completely unusable.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 3 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# EXECUTIVE OFFICER REPLACEMENT EXPENSES SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreements is amended to include:

Executive Officer Replacement Coverage

The **Insurer** shall pay the **Named Insured** for **Replacement Expenses** incurred due to the replacement of the Chief Executive Officer or Executive Director who dies or becomes totally or permanently disabled due to **Accidental Injury** while in the course of the **Insured's** business and during the **Policy Period**.

The **Insurer's** maximum limit of liability under this provision is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations and is excess of the Corporate Entity Liability Retention stated in Item 4. of the D&O Declarations.

B.  For the purpose of this endorsement:

**Accidental Injury** means the unintended, unforeseeable and unexpected physical injury, trauma or damage to an **Insured Individual's** body.

   **Accidental Injury** does not include:

   1.  An intentional act by any **Insured**, director, officer or trustee; or

   2.  An act of suicide or attempted suicide, whether or not the deceased was sane or insane at the time of the attempted suicide; or

   3.  An act of war; or

   4.  A disease process.

**Replacement Expenses** means:

A.  Costs of advertising an employment position opening;

B.  Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for an employment position opening; and

C.  Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including but not limited to overtime pay, costs to verify the background and references of the applicants, and legal expenses incurred to draw up employment contracts.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 4 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# TEMPORARY MEETING SPACE SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

Section I. Insuring Agreements is amended to include:

Temporary Meeting Space Supplemental Coverage

The **Insurer** will pay to the **Insured**, costs for the rental of temporary meeting space incurred by an **Insured Entity** as a result of the temporary unavailability of the **Insured Entity's** primary office space due to the failure of a climate control system or leakage of a hot water heater which occurs during the **Policy Period**. This coverage will only apply to the rental of temporary meeting space required for meeting with parties that are not **Insureds**.

The **Insurer's** maximum limit of liability for Temporary Meeting Space Supplemental Coverage is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations and is excess of the Corporate Entity Liability Retention stated in Item 4. of the D&O Declarations.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Case 4:24-cv-00730-SRB    Document 1-1    Filed 11/05/24    Page 50 of 98





Coverage Part: Directors & Officers and Entity Liability

Endorsement Number: 5

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

# WORKPLACE VIOLENCE COUNSELING SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreements is amended to include:

Workplace Violence Counseling Expense Coverage

The **Insurer** shall pay the cost of emotional counseling of **Insured Individuals** incurred by an **Insured Entity** resulting from **Workplace Violence** that occurs during the **Policy Period**.

The **Insurer's** maximum limit of liability under this provision is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations and is excess of the Corporate Entity Liability Retention stated in Item 4. of the D&O Declarations.

B. For the purpose of coverage provided by this endorsement:

**Workplace Violence** means any intentional use of or threat to use bodily force by any individual with intent to cause harm and which results in injury or death of an individual while on the **Insured Entity's** premises.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Form 905 1109 Ed. 01/14


| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 6 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# PERSONAL INTERVIEW EXPENSES
# WITH OPTIONAL REPORTING

In consideration of the premium charged it is agreed that:

A. For purposes of this endorsement, Section I. Insuring Agreements is amended to include:

Non-Indemnified Personal Interview Expenses

The **Insurer** will pay on behalf of each **Insured Individual**, **Personal Interview Expenses** incurred by such **Insured Individual** in responding to a **Personal Interview Request** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period, except for **Personal Interview Expenses** which the **Insured Entity** pays to or on behalf of the **Insured Individual** as indemnification.

Indemnified Personal Interview Expenses

The **Insurer** will pay on behalf of the **Insured Entity**, **Personal Interview Expenses** incurred by an **Insured Individual** in responding to a **Personal Interview Request** first made against the **Insured Individual** during the **Policy Period** or the Extended Reporting Period if applicable, but only to the extent the **Insured Entity** indemnifies the **Insured Individual** for such **Personal Interview Expenses**.

B. Section VII. Limit of Liability is amended to include the following:

The **Insurer's** maximum limit of liability for **Personal Interview Expenses** is $25,000 per **Policy Period** and is part of and not in addition to, the Maximum Aggregate Limit of Liability stated in Item 3**.** of the D&O Declarations. If the **Insured Individual** is indemnified by the **Insured Entity,** such sublimit is excess of the Individual Indemnified Liability Insuring Agreement I.B. Retention stated in Item 4. of the D&O Declarations. If the **Insured Individual** is not indemnified by the **Insured Entity,** such sublimit is excess of the Individual Non-Indemnified Liability Insuring Agreement I.A. Retention stated in Item 4. of the D&O Declarations.

C. For purposes of this endorsement, Section III. Definitions is amended to include:

**Personal Interview Expenses** mean the reasonable costs, charges, fees, or expenses, incurred by an **Insured Individual**, or the **Insured Organization** to the extent the **Insured Entity** indemnifies the **Insured Individual**, in responding to a **Personal Interview Request**. **Personal Interview Expenses** do not include:

A. The regular or overtime wages, salaries, or fees of any director, officer, **Executive**, or employee of an **Insured Entity** or **Outside Entity**, or any other compensation of an **Insured Person**;

B. The costs of complying with any formal or informal discovery or other requests seeking documents, records or electronic information in the possession or control of the **Insured Entity**.

**Personal Interview Request** means a written request for an **Insured Individual** to appear for an interview or meeting, or to produce documents or records, concerning matters or circumstances occurring before or during the **Policy Period**, made by:

A. An **Enforcement Body** in connection with an investigation of: (i) the **Insured Organization**; or (ii) an **Insured Individual**, in his or her capacity as such; or



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 6 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

    B.  An **Insured Organization** in connection with an investigation by an **Enforcement Body** against such **Insured Organization**;

provided that, **Personal Interview Request** does not include a routine or regularly scheduled examination, inspection, compliance, oversight, interview or audit including any request for mandatory information, conducted in the **Insured's** and/or **Enforcement Body's** ordinary review or compliance procedures.

**Enforcement Body** means:

    A.  Any federal, state, local or foreign law enforcement authority or other governmental investigative authority including but not limited to, the U.S. Department of Justice, the SEC and any attorney general; or

    B.  The enforcement unit of any securities or commodities exchange or other self-regulatory organization.

D.  For the purpose of this endorsement, Section III. A. of the definition of **Claim** is amended to include:

    **Personal Interview Request**

E.  For the purposes of this endorsement, Section III. the definition of **Loss**, paragraph 4. under "However, **Loss** does not include:" is deleted and replaced by:

    4.  **Investigative Costs** incurred by an **Insured** in the defense or investigation of any action, proceeding or demand (other than costs arising from a **Security Holder Derivative Demand** or **Personal Interview Expenses**) that was not a **Claim** even if such amount also benefits the defense of a covered **Claim** or such action, proceeding or demand that subsequently gives rise to a **Claim**;

F.  Section IV.A. of Exclusions is amended to include:

This insurance does not apply to **Loss** for any **Personal Interview Request** received by an **Insured Individual**, alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Acts** alleged or contained in any **Claim**, or the facts or **Wrongful Acts** that were the subject of any **Personal Interview Request**, which has been reported, or in any circumstances of which notice has been given, under any policy of which this Coverage Part is a renewal or replacement

G.  For the purposes of this endorsement, Section IX. Reporting is amended by adding the following:

Notwithstanding any of the above, it is optional for any **Insured** to report a **Personal Interview Request** as part of any **Claim**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


Coverage Part: Directors & Officers and Entity Liability

Issued To: Bela Flor Nurseries, Inc.

Issued By: The Hanover Insurance Company

Endorsement Number: 7

Policy Number: LHC-A866791-09

Effective Date: 04/15/2024

## AUTOMATIC RETIREE EXTENDED REPORTING

In consideration of the premium charged it is agreed that:

Section II. Extended Reporting Period is amended to include:

If an **Executive** retires or voluntarily resigns and no longer serves in his or her capacity as an **Executive** during the **Policy Period;** the **Named Insured** does not renew this Coverage Part, or the **Named Insured** terminates this Coverage Part; and this Coverage Part is not replaced by any other directors and officers liability coverage, then coverage granted by this Coverage Part under Insuring Agreement A. for such **Executive** is extended for a six (6) year period from such **Executive's** official retirement date, but only with respect to a **Claim** for a **Wrongful Act** occurring before such **Executive's** official retirement date, at no additional premium. However, no coverage is given in this section if the **Named Insured** elects to purchase an Extended Reporting Period pursuant to this Coverage Part for any reason. The Limit of Liability for this additional reporting period for such **Executives** is part of, and not in addition to, the Limits of Liability of the expiring Coverage Part.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Endorsement

| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 8 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## ADVISORY BOARD MEMBERS

In consideration of the premium charged it is agreed that:

Section III. Definitions, the definition of **Insured Individual,** is amended to include any natural person serving as a member of the Advisory Board of an **Insured Entity** if such person is granted indemnification by the **Insured Entity** to the fullest extent permitted by common or statutory law to the same extent as any director or officer of the **Insured Entity**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 9 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# EMPLOYED LAWYERS PROFESSIONAL SERVICES COVERAGE

In consideration of the premium charged it is agreed that:

A. For the purpose of this endorsement, Section III. Definitions, the definition of **Insured Individual** is amended to include any **Employed Lawyer**, **Temporary Attorney**, **Legal Assistant** or **Independent Contractor Attorney** or a holder of an equivalent position of **Employed Lawyer** or **Legal Assistant** of an **Insured Entity** incorporated anywhere in the world.

B. For the purpose of this endorsement, Section III. Definitions, the definition of **Wrongful Act** is amended to include:

**Wrongful Act** also means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Legal Professional Services** by an **Employed Lawyer**, **Temporary Attorney**, **Legal Assistant** or **Independent Contractor Attorney** while acting in his or her capacity as such.

C. For the purpose of this endorsement, Section III. Definitions is amended to include:

**Employed Lawyer** means any employee of the **Insured Entity** who is admitted to practice law and who was, now is, or shall be employed as a lawyer full time for and salaried by, an **Insured Entity**.

**Independent Contractor Attorney** means any person admitted to practice law, who provides legal services to an **Insured Entity**, indemnified by the **Insured Entity** through an indemnification clause under an independent contractor written services agreement, and who is not employed by a law firm.

**Legal Assistant** means any person who is, was or becomes a full-time or part-time employee of an **Insured Entity** who provides legal support to an **Employed Lawyer** in the performance of **Legal Professional Services**.

**Legal Professional Services** means:

A. Legal services and notary public services, rendered to an **Insured Entity** by an **Employed Lawyer** solely while acting in his or her capacity as such;

B. Legal services and notary public services, rendered to an **Insured Entity** by an **Independent Contractor Attorney**, **Temporary Attorney** or **Legal Assistant** solely while acting in his or her capacity as such and under the supervision and direction of an **Employed Lawyer**; or

C. Pro bono legal services rendered by an **Employed Lawyer** without compensation to indigent clients or for nonprofit public interest groups solely while such **Employed Lawyer** is a full-time or part-time employee of an **Insured Entity**.

**Temporary Attorney** means any person admitted to practice law anywhere in the world, who provides legal services to the **Insured Entity** through a temporary employment agency based on a written agreement between an **Insured Entity** and the temporary employment agency, but only if the **Insured Entity** agrees in writing no later than thirty (30) days after a **Claim** is reported in accordance with Section IX. Reporting, to indemnify the **Temporary Attorney** for **Loss** arising out of such **Claim**.



Coverage Part: Directors & Officers and Entity Liability

Endorsement Number: 9

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

D. The maximum limit of liability for all **Loss** based upon or arising out of **Legal Professional Services** provided by an **Employed Lawyer**, **Temporary Attorney**, **Legal Assistant** or **Independent Contractor Attorney** while acting in his or her capacity as such is $1,000,000 per **Policy Period** and is part of and not in addition to the Maximum Aggregate Limit of Liability stated in Item 3. of the D&O Declarations. No other limit of liability shall apply for any **Loss** arising out of coverage provided by this endorsement.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Endorsement

| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 10 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## AMEND INSURED vs. INSURED EXCLUSION
## FORMER INSURED INDIVIDUALS

In consideration of the premium charged it is agreed that:

Section IV.A.6.a.5) of Exclusions is deleted and replaced with the following:

5) Brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least 1 years;

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




Endorsement

| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 11 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# DELETE ANTITRUST EXCLUSION

In consideration of the premium charged it is agreed that:

Section IV.B.3. of Exclusions is deleted in its entirety

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




Endorsement

| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 12 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## AMEND BODILY INJURY OR PROPERTY DAMAGE EXCLUSION CORPORATE MANSLAUGHTER

In consideration of the premium charged it is agreed that:

Section IV.A.4. of Exclusions is deleted and replaced with the following:

4. Bodily Injury or Property Damage

For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of property that is not physically damaged; or for bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual. However this Exclusion IV.A.4. shall not apply to **Defense Costs** for a **Claim** which is a criminal proceeding for manslaughter (or any other similar offense).

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

 

| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 13 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# EMPLOYMENT PRACTICES EXCLUSION
## (ALL INSURING AGREEMENTS)

In consideration of the premium charged it is agreed that:

A.  Section IV.A. Exclusions Applicable to All Insuring Agreements is amended to include:

Employment Practices

Based upon, arising out of or in any way related to any past, present or future actual or potential:

a.  Employment relationship including an employment-related **Wrongful Act**;

b.  Discrimination against or sexual harassment of any third party;

c.  Violation of federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act.

B.  Section IV.B.4. of Exclusions is deleted in its entirety.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 14 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## PRODUCT DEFECT / WARRANTY / ADVERTISING EXCLUSIONS FOR ALL INSURING AGREEMENTS

In consideration of the premium charged it is agreed that:

A.  Section IV. B.6. Product Defect is hereby deleted.

B.  Section IV. A. of Exclusions is amended to include the following:

<u>Product Defect and Warranties</u>

Based upon, arising out of or in any way related to any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of such product including any actual or alleged violations of the Magnuson-Moss Warranty Act, as amended, or any similar provisions of federal, state or local statutory law or common law, or any rules or regulations promulgated thereunder.  However this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

<u>False Advertising</u>

Based upon, arising out of or in any way related to any actual or alleged false or misleading advertising, marketing, or labeling, or other unfair or deceptive trade practices, related to the advertising of the **Insured's** own products, goods, publications or services, including any actual or alleged violations of the Federal Trade Commission Act of 1914, as amended, the Wheeler-Lea Act of 1938, as amended, or any similar provisions of federal, state or local statutory law or common law, or any rules or regulations promulgated thereunder; however, this Exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action.**

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 15 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## CONTRACT EXCLUSION SHAREHOLDER CARVEBACK

In consideration of the premium charged it is agreed that:

Section IV.B.1., Contract is amended to include the following:

However this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Coverage Part: Directors & Officers and Entity Liability        Endorsement Number: 16

Issued To: Bela Flor Nurseries, Inc.        Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company        Effective Date: 04/15/2024

# AMEND CONDUCT EXCLUSION

In consideration of the premium charged it is agreed that:

Section IV.A.3. of Exclusions is deleted and replaced with the following:

3. <u>Conduct</u>

   Based upon, arising out of or in any way related to:

   a. Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or

   b. An **Insured** gaining any personal profit, remuneration or financial advantage to which such **Insured** was not legally entitled;

   However, this exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in the underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Coverage Part: Directors & Officers and Entity Liability

Endorsement Number: 17

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

## LIMITED PRODUCT DEFECT EXCLUSION DEFENSE CARVEBACK

In consideration of the premium charged it is agreed that:

Section IV.B.6. of Exclusions is deleted and replaced with the following:

6. Product Defect

   For any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture. However this exclusion shall not apply to **Defense Expenses,** or to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand** or **Security Holder Derivative Action**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 18 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# BIOMETRIC INFORMATION EXCLUSION

In consideration of the premium charged it is agreed that:

Section IV. Exclusions is amended to include:

<u>Biometric Information</u>

Based upon, arising out of or in any way related to the responsibilities, obligations, duties or rules imposed by any foreign, federal, state or local statutory law or regulation, anywhere in the world including but not limited to the Illinois Biometric Information Privacy Act and the EU General Data Protection Regulation, that governs the collection, storage, destruction, disclosure, protection, use, sale, lease or trade of biometric information including but not limited to the characteristics of any fingerprint, handprint, facial geometry, retinal scan, or voiceprint. However, this exclusion shall not apply to **Loss** arising from any securities **Claim**, **Security Holder Derivative Demand**, or **Security Holder Derivative Action.**

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 19 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## AMEND CONSENT TO SETTLE
## (DELETE "HAMMER CLAUSE")

In consideration of the premium charged it is agreed that:

Section VI. E. of Defense and Settlement of Claims is deleted and replaced with the following:

E. The **Insurer** may make any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 12 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## PURCHASE OF RUN-OFF PERIOD
## (WINDING-DOWN COVERAGE)

In consideration of the premium charged it is agreed that:

If there is a change in control of the **Named Insured,** pursuant to Section VIII. A. Acquisition of the **Named Insured** of the Common Policy Terms and Conditions, this Coverage Part is amended as follows:

Additional Premium:      $8,064.00

Run-Off Period:      Inception Date:   04/15/2024

Expiration Date:  04/15/2030

(12:01 AM standard time at the address
shown in Item 1 of the CTC Declarations)

A. This Coverage Part applies only to **Claims** made and reported during the Run-Off Period set forth above for:

1. **Wrongful Acts** which were committed or occurred prior to the Inception Date of the Run-Off Period; or

2. **Winding**-**Down Activities** which are committed during the Run-Off Period.

B. **Winding**-**Down Activities** means any **Wrongful Act** committed or allegedly committed by Steve Bateski, Jim Larson, Brian Aguilar, in the winding-down of the affairs, business and operations of the **Named Insured** including but not limited to the process of paying any outstanding creditors, settling the accounts and distributing and/or selling any remaining assets to the appropriate parties.

C. The Run-Off Period does not extend the **Policy Period**, increase the Limits of Liability or change any terms or conditions of the Coverage Part not specifically referenced in this endorsement.

D. All premium for the Run-Off Period is fully earned as of the Inception Date shown above.

E. This endorsement will not take effect unless the additional premium for it as set forth above is paid when due. If that premium is paid when due, this endorsement may not be cancelled.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 21 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSMENT

In consideration of the premium charged it is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our **Insurer** deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case any insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

A. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

B. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Form 905 5076 Ed. 01/15





| | |
|---|---|
| Coverage Part: Directors & Officers and Entity Liability | Endorsement Number: 22 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## CONDITIONAL WAIVER OF CONSENT TO SETTLE

In consideration of the premium charged it is agreed that:

Section VI.D. of Defense and Settlement of Claims is deleted and replaced with the following:

D. No **Insured** shall settle any **Claim**, voluntarily make any payment, assume any obligation, or incur any expense related to a **Claim** without the **Insurer's** consent. However, in the event the **Insured** receives a written settlement offer or demand to a **Claim** that:

1. Includes a condition that the settlement be approved within fourteen (14) days or less;

2. Includes an amount that is below the applicable retention; and

3. Upon agreement on the settlement amount, the parties will enter into and sign a written settlement agreement or release which includes, but is not limited to, defense, indemnification and a release of the **Insured** and **Insurer** for any and all past, present and future liablity for all matters involving such **Claim** or any **Related Claim(s)** that have been or could have been asserted against any **Insured** or the **Insurer**;

then, the **Insured** may settle such **Claim** after review and sign off by defense counsel, without the **Insurer's** consent provided it notifies the **Insurer** of such settlement and the release within thirty (30) days of the execution of the written settlement agreement or release.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





| | |
|---|---|
| Coverage: Directors & Officers and Entity Liability | Endorsement Number: 23 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# AMEND REPORTING
# SCHEDULED INDIVIDUALS AWARE AND NUMBER OF DAYS

In consideration of the premium charged it is agreed that:

Section IX.A. of Reporting, the first sentence is deleted and replaced with the following:

A.  An **Insured** shall provide the **Insurer** with written notice as soon as practicable after the CEO & CFO, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**, but in no event later than:

   1.  one hundred and eighty (180)days after the effective date of expiration or termination; or

   2.  The expiration date of the Extended Reporting Period, if applicable.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



# Private Company Advantage
### Employment Practices Liability Coverage Part

<div align="right">

**EPL Declarations**

</div>

NOTICE: THIS COVERAGE PART IS WRITTEN ON A CLAIMS-MADE BASIS.  SUBJECT TO ITS TERMS, THIS COVERAGE PART APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMITS OF LIABILITY CAN BE COMPLETELY EXHAUSTED BY DEFENSE EXPENSES AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION.  THE INSURER WILL HAVE NO LIABILITY FOR DEFENSE EXPENSES OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.

PLEASE READ THE ENTIRE POLICY CAREFULLY.

<table>
<tr><td><b>Policy Number</b></td><td><b>The Hanover Insurance Company</b></td></tr>
<tr><td>LHC-A866791-09</td><td>440 Lincoln Street<br>Worcester, Massachusetts 01653<br>(A Stock Insurance Company, herein called the <b>Insurer</b>)</td></tr>
</table>

**Item 1.**  **NAMED INSURED**

Bela Flor Nurseries, Inc.
28615 SE Outer Rd.
Harrisonville, MO 64701

**Item 2.**  **POLICY PERIOD**

Inception Date: 06/30/2022   Expiration Date: 06/30/2025

(12:01 AM standard time at the address shown in Item 1)

**Item 3.**  **LIMIT OF LIABILITY FOR THIS COVERAGE PART**

Maximum Aggregate Limit of Liability:        $1,000,000

**Item 4.**  **RETENTIONS**

With respect to any **Employment Claim**             $50,000 Each **Claim**

With respect to any **Third Party Claim**            $50,000 Each **Claim**

**Item 5.**  **PRIOR & PENDING PROCEEDINGS DATE**

With respect to any **Employment Claim**             03/06/2015

With respect to any **Third Party Claim**            03/06/2015

**Item 6.**  **EXTENDED REPORTING PERIOD**

Percentage of Annualized Premium:            100%

Additional Period:                           12    Months

**Item 7.**  **PREMIUM FOR COVERAGE PART**             $14,278.00

Form 906 1002 Ed. 01/14                                                  Page 1 of 2


## EPL Declarations

We have caused this Policy to be signed by our President and Secretary and countersigned where required by a duly authorized agent of the Company.

John C. Roche, President

Charles F. Cronin, Secretary



*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.*
*PLEASE READ THE POLICY CAREFULLY.*

In consideration of the premium paid, in reliance upon the statements in the **Application** and subject to the Declarations, limitations, conditions, definitions and other provisions of this Policy, including endorsements hereto, the **Insurer** and the **Insureds** agree as follows:

**I.   INSURING AGREEMENT**

The **Insurer** will pay on behalf of the **Insured**, **Loss** which the **Insured** is legally obligated to pay due to an **Employment Claim** or a **Third Party Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable.

**II.   EXTENDED REPORTING PERIOD**

A.   If the **Insurer** or the **Named Insured** terminates or does not renew this Coverage Part, other than termination by the **Insurer** for nonpayment of premium, then the **Named Insured** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 6. of the EPL Declarations beginning on the effective date of the termination or non-renewal of this Coverage Part. The **Named Insured** must provide a written request for the Extended Reporting Period including payment of the additional premium, as set forth in Item 6. of the EPL Declarations, within thirty (30) days following the effective date of the termination or non-renewal of this Coverage Part.  Additional premium paid shall be deemed fully earned as of the first day of the Extended Reporting Period and the Extended Reporting Period may not be cancelled.

B.   If an Extended Reporting Period is purchased, then coverage as provided by this Coverage Part shall be extended to **Claims** first made during such Extended Reporting Period and reported pursuant to Section VIII. Reporting, of this Coverage Part, but only if such **Claims** are for **Wrongful Acts** which occurred entirely prior to the effective date of the termination or non-renewal of this Coverage Part.

**III.   DEFINITIONS**

**Claim** means an **Employment Claim** and a **Third Party Claim**.

**Defense Expenses** means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the **Insurer** or the **Insured** (other than regular or overtime wages, salaries, fees or benefits of **Insured Individuals**) in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds regarding such **Claim**.

**Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an **Employee** based on such person's race, color, religion, creed, genetic information, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

Case 4:24-cv-00730-SRB    Document 1-1    Filed 11/05/24    Page 74 of 98


**Employee** means:

A.  A natural person whose labor and services is, was or will be engaged and directed by an **Insured Entity**, including any part-time, leased, temporary, volunteer or seasonal worker; or

B.  An **Independent Contractor** for the **Insured Entity**, but only if the **Insured Entity** provides indemnification to such **Independent Contractor** in the same manner as that provided to the **Employees** described in A. above.

The status of an individual as an **Employee** will be determined as of the date of the alleged **Wrongful Act**.

**Employment Claim** means:

A.  Any:

1.  Written demand first received by an **Insured** for monetary or non-monetary relief including a written demand for reinstatement, reemployment, re-engagement or injunctive relief;

2.  Civil proceeding commenced by the service of a complaint or similar pleading;

3.  Criminal proceeding commenced by the filing of charges;

4.  Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency;

5.  A Notice of Violation or Order to Show Cause arising from an audit conducted by the Office of Federal Contract Compliance Programs.

6.  Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Insured Entity** against an **Insured** for an **Employment Wrongful Act**, including any appeal therefrom; or

B.  Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Employment Claim** described in A.1. through A.6. above.

However, **Employment Claim** shall not include any arbitration or grievance proceeding pursuant to a collective bargaining agreement.

**Employment Contract** means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

**Employment Wrongful Act** means any actual or alleged:

A.  **Discrimination**;

B.  **Retaliation**;

C.  **Sexual Harassment**;

D.  **Workplace Harassment**;

E.  **Wrongful Termination**;

F.  Breach of an **Employment Contract**;

G.  **Workplace Tort**;

committed, attempted or allegedly committed or attempted by an **Insured Entity** or by an **Insured Individual** while acting in his or her capacity as such.



**Independent Contractor** means any natural person who is working on behalf of an **Insured Entity** pursuant to a written contract or agreement.

**Insured** means any **Insured Individual** or **Insured Entity**.

**Insured Individual** means any past, present or future **Executive** or **Employee** (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity**.

**Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:

A.  Monetary judgments, awards or settlements, pre-judgment interest and post-judgment interest, back and front pay, compensatory damages;

B.  Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the **Insured**, the **Insurer**, or to the **Claim** giving rise to such damages;

C.  Liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act;

**Loss** does not include the portion of such amount that constitutes:

1.  Civil, criminal or administrative fines, taxes or penalties;

2.  The cost to comply with or provide any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state, or local statutory law or common law anywhere in the world including the Americans with Disabilities Act, the Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated under any such law;

3.  Any future wages or benefits of any reinstated **Employee** or wages or benefits associated with the continued employment of an **Employee**;

4.  Any matter deemed uninsurable by law;

5.  Benefits or contributions payable under an employee benefit plan;

6.  Salary, wages, commission, benefits or other monetary payments which constitute severance payments or payments pursuant to a notice period;

7.  Any amount not indemnified by the **Insured Entity** for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order; or

8.  Any amount allocated to non-covered loss pursuant to Section IX. Allocation, of this Coverage Part

**Policy Period** means the period of time from the inception date shown in Item 2. of the EPL Declarations to the earlier of the expiration date shown in Item 2. of the EPL Declarations or the effective date of termination of this Policy or Coverage Part.

**Related Claims** means all **Claims** based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances, situations, transactions, results, damages or events.

**Related Wrongful Acts** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or decision.

**Retaliation** means any actual or alleged **Wrongful Termination** or other adverse employment action against an **Employee** on account of such **Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of



the law, or on account of the **Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

**Sexual Harassment** means any actual or alleged unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature which is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, an **Insured Entity**.

**Third Party** means:

   A.  Any natural person who is a customer, patient, vendor, services provider or other business invitee of an **Insured Entity**, provided that the **Insured Entity** or an **Insured Individual** has a valid express contract or agreement with such entity which was in effect at the time the **Third Party Wrongful Act,** alleged in a **Third Party Claim**, occurred or is alleged to have occurred; or

   B.  Any natural person (other than an **Employee** or a natural person described in paragraph A. above) who has interaction with an **Employee**, but only with respect to harassment committed or allegedly committed by such **Employee** during his or her hours of employment with the **Insured Entity**.

**Third Party Claim** means:

A.  Any:

   1.  Written demand first received by an **Insured** for monetary or non-monetary relief;

   2.  Civil proceeding commenced by the service of a complaint or similar pleading;

   3.  Criminal proceeding commenced by the filing of charges;

   4.  Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document;

   5.  Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

   which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Third Party Wrongful Act**, including any appeal therefrom; or

   6.  A written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Third Party Claim** described in A.1. through A.5. above.

**Third Party Wrongful Act** means any actual or alleged:

A.  **Discrimination** against a **Third Party** based on such **Third Party's** race, color, religion, creed, genetic information, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

B.  Harassment against a **Third Party**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature.

**Workplace Harassment** means any actual or alleged harassment, other than **Sexual Harassment**, or bullying which creates an intimidating, hostile or offensive working environment within an **Insured Entity**.

**Workplace Tort** means any:

A.  Employment related misrepresentation, defamation, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity;

B.  Invasion of privacy including the unauthorized use or disclosure of an **Employee's** medical information in violation of the Health Insurance Portability and Accountability Act, credit information in violation of the Fair Credit Reporting Act, or other related information obtained through an employment related background check;


C. Negligent retention, supervision, hiring, training, wrongful infliction of emotional distress, mental anguish or humiliation, failure to provide or enforce consistent employment related corporate policies and procedures or false imprisonment, but only if such act is alleged in connection with a **Claim** alleging **Discrimination**, **Retaliation**, **Sexual Harassment**, **Workplace Harassment**, **Wrongful Termination** or breach of an **Employment Contract**.

**Wrongful Termination** means the actual or constructive termination of an employment relationship between an **Employee** and an **Insured Entity** in a manner or for a reason which is contrary to applicable law or public policy or in violation of an **Employment Contract**.

**Wrongful Act** means any **Employment Wrongful Act** or **Third Party Wrongful Act**.

## IV.  EXCLUSIONS

This insurance does not apply to **Loss** for any **Claim**:

A.  <u>Prior Notice</u>

Based upon, arising out of or in any way related to any **Claim**, **Wrongful Act**, investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice accepted by any other **Insurer**, under any similar policy of which this Policy is a direct or indirect renewal or replacement.

B.  <u>Prior & Pending Proceedings</u>

Based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against any **Insured**, or any order, decree or judgment entered prior to or on the Prior & Pending Proceedings Date set forth in Item 5. of the EPL Declarations.

C.  <u>Bodily Injury or Property Damage</u>

For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of property that is not physically damaged; or for bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery, however this exclusion shall not apply to mental anguish, humiliation or emotional distress arising out of a **Wrongful Act**.

D.  <u>Employee Benefits</u>

For any violation or failure to comply with the responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law, anywhere in the world including regulations promulgated under any such law that governs any employee benefit arrangement, program, plan policy or scheme of any type, including but not limited to, the Employee Retirement Income Security Act of 1974 (except section 510 thereof) and the Consolidated Omnibus Budget Reconciliation Act of 1985 as amended.  This exclusion does not apply to any **Claim** for retaliatory treatment against any **Insured** who is attempting to exercise his or her rights under the above referenced statutes, laws, rules, regulations or orders.

E.  <u>Labor Relations/Occupational Safety/Notification/Workers Compensation/Wage and Hour</u>

For any violation or failure to comply with:

1.  The responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law, anywhere in the world including regulations promulgated under any such law, that governs the rights of employees to engage in union or other collective bargaining activities, the duty of an employer to meet, discuss or bargain with employee representatives, the enforcement of any collective bargaining agreement or any grievance or arbitration proceedings, including but not limited to, the National Labor Relations Act, as amended. This exclusion does not apply to any **Claim** for retaliatory treatment against




any **Insured** who is attempting to exercise his or her rights under the above referenced statute, law, rule, regulation or order;

2. The responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law anywhere in the world including regulations promulgated under any such law that governs workplace safety and health, including but not limited to, the Occupational Safety and Health Act, as amended. This exclusion does not apply to any **Claim** for retaliatory treatment against any **Insured** who is attempting to exercise his or her rights under the above referenced statute, law, rule, regulation or order;

3. The responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law anywhere in the world including regulations promulgated under any such law that governs any obligation of an employer to notify, discuss, or bargain with employees or others in advance of any plant or facility closing or mass layoff, or any similar obligation, including but not limited to, the Worker Adjustment and Retraining Notification Act, as amended;

4. The responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law anywhere in the world, including the Fair Labor Standards Act, and regulations promulgated under any such law that governs wage, hour and payroll policies and practices, (except the Equal Pay Act); or

5. Any law concerning workers compensation, unemployment insurance, Social Security, disability benefits or any similar federal, state or local law anywhere in the world.

However, this exclusion shall not apply to an **Employment Claim** for **Retaliation**.

F. Breach of Written Employment Contract

Based upon, arising out of or in any way related to the breach of any written **Employment Contract**. However this exclusion shall not apply to **Defense Expenses** or to the extent that an **Insured** would have been liable for **Loss** in the absence of such written **Employment Contract**.

G. Accommodation

For costs and expenses incurred, or to be incurred, to comply with an order, judgment or award of injunctive or other equitable relief of any kind, including but not limited to, costs and expenses associated with or arising from an **Insured's** obligations under the Americans With Disabilities Act or the Rehabilitation Act of 1973, as amended or any similar federal, state or local law anywhere in the world. However, this exclusion shall not apply to **Defense Expenses**.

## V. DEFENSE AND SETTLEMENT OF CLAIMS

A. The **Insurer** shall have the exclusive right and duty to defend any **Claim** covered by this Coverage Part even if any allegation of such **Claim** is groundless, false or fraudulent. However, if an **Insured** is entitled under applicable law to select defense counsel, then such defense counsel shall comply with the **Insurer's** customary rates and litigation guidelines regarding billing, staffing and reporting. The **Insurer** has no duty to defend any **Claim** or pay **Defense Expenses** for **Claims** to which this insurance does not apply.

B. The right and duty to defend any **Claim** covered under this Policy shall cease when the Maximum Aggregate Limit of Liability in Item 3. of the EPL Declarations or the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations has been exhausted by the payment of **Loss**.

C. The **Insureds** shall provide all information in connection with any **Claim** and cooperate with the **Insurer** in the investigation, defense and settlement of any **Claim**.

D. No **Insured** shall settle any claim, voluntarily make any payment, assume any obligation, or incur any expense related to a **Claim** without the **Insurer's** consent.

E. The **Insurer** may make any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld. If any **Insured** refuses to consent to the settlement of any **Claim** which the **Insurer** recommends and which is acceptable to the claimant, subject to the applicable Limit of Liability or Retention, the **Insurer's** liability for all **Loss** from such **Claim** shall not exceed:

1. The amount the **Insurer** would have contributed to the settlement including **Defense Expenses** incurred up to the date of such refusal; and

2. Eighty percent (80%) of such **Loss** in excess of the amount for which the **Claim** would have been settled.

F. If the **Insurer** is prevented by law or otherwise unable to defend or investigate a **Claim** brought outside the United States, the **Insured** under the **Insurer's** supervision may arrange for the investigation, appointment of counsel and defense of such **Claim**. Subject to the applicable Limit of Liability and Retention, the **Insurer** will reimburse the **Insured** for any reasonable and necessary **Defense Expenses** for such **Claim**.

## VI. LIMIT OF LIABILITY

Regardless of the number of **Insureds**, **Claims**, or claimants, the **Insurer's** liability under this Coverage Part is limited as follows:

A. If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under this Coverage Part, shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations or the unpaid portion of the Combined Policy Aggregate Limit of Liability stated in Item 3. of the Policy Declarations, whichever is less.

B. If the Combined Policy Aggregate Limit of Liability in Item 3. of the Policy Declarations is not elected, the **Insurer's** maximum liability for all **Loss** during the **Policy Period** arising from a **Claim** or **Related Claims** under this Coverage Part, shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations.

## VII. RETENTION

A. The **Insurer's** liability under this Coverage Part applies only to that part of covered **Loss** which is in excess of the applicable Retention stated in Item 4. of the EPL Declarations. Such Retentions shall be considered uninsured amounts and be borne by the **Insureds** at their own risk.

B. If different parts of a **Claim** are subject to different Retentions in different Insuring Agreements the applicable Retentions will be applied separately to each part of such **Claim** but the sum of such Retentions shall not exceed the largest applicable Retention.

C. No retention shall apply to any **Loss** under this Coverage Part incurred by an **Insured Individual** if such **Loss** cannot be indemnified by an **Insured Entity** because such **Insured Entity** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is unable to do so by reason of financial impairment.

## VIII. REPORTING

A. An **Insured** shall provide the **Insurer** with written notice as soon as practicable after the Chief Executive



Officer, Chief Financial Officer, President, In-House General Counsel, any person of the human resources department or any person with the responsibility for the management of insurance claims, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**, but in no event later than:

1. Ninety (90) days after the effective date of expiration or termination; or

2. The expiration date of the Extended Reporting Period, if applicable.

However, if the **Insurer** sends written notice to the **Named Insured** stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give the **Insurer** written notice of such **Claim** prior to the effective date of such termination.

B. Notwithstanding paragraph A. immediately above, solely with respect to an **Employment Claim** that is brought as a formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, an **Insured** shall give written notice during the **Policy Period** or, if applicable, no later than:

1. One hundred eighty (180) days after the end of the **Policy Period** if this Coverage part is renewed;

2. Ninety (90) days after the effective date of expiration or termination if this Coverage Part is not renewed with the **Insurer** and no Extended Reporting Period is purchased; or

3. The expiration date of the Extended Reporting Period, if elected.

C. If during the **Policy Period**, or an applicable Extended Reporting Period, an **Insured** becomes aware of any act or circumstances that may subsequently give rise to a **Claim** and gives the **Insurer** notice of such act or circumstances, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which the circumstances were first reported to, and accepted by the **Insurer** provided that any such subsequent **Claim** is reported to the **Insurer** in accordance with paragraph A. above.

D. An **Insured** must give to the **Insurer** the assistance, information and cooperation as the **Insurer** may require and shall include in any notice of a **Claim**, or circumstances of a potential **Claim**, a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature and amount of alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

E. Notice of a **Claim** or a potential **Claim** must be provided in writing to the addresses stated in Item 7. of the Policy Declarations.

## IX.    ALLOCATION

If an **Insured** incurs **Loss** on account of any **Claim** and such **Claim** includes both covered and non-covered matters, coverage with respect to such **Claim** shall apply as follows:

A. One hundred percent (100%) of **Defense Expenses** on account of the **Claim** will be considered covered **Loss** provided that this shall not apply to any **Insured** for whom coverage is excluded pursuant to Section XI. Representations and Severability; and

B. The **Insurer** shall fairly allocate all remaining loss that an **Insured** incurred on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to such matters.

## X.    OTHER INSURANCE



A.  An **Employment Claim Loss** payable under this Coverage Part shall be primary; however, if such **Employment Claim** is made against a leased or temporary employee or **Independent Contractor**, that portion of such **Loss** payable under this coverage part shall be excess of, and not contribute to, any other valid and collectible insurance (other than a policy that is issued specifically as excess of this Coverage Part) regardless of whether or not such insurance is stated to be primary, contributory, excess, contingent or otherwise.

B.  A **Third Party Claim Loss** payable under this Coverage Part shall be excess of, and not contribute to, any other valid and collectible insurance (other than a policy that is issued specifically as excess of this Coverage Part) regardless of whether or not such insurance is stated to be primary, contributory, excess, contingent or otherwise.

## XI. REPRESENTATIONS AND SEVERABILITY

A.  The declarations and statements in the **Application** for this Coverage Part are the **Insured's** representations and the **Insurer** has relied on such representations when issuing this Coverage Part.  Such representations are incorporated into and constitute part of this Coverage Part.

   1.  The **Application** shall be construed as a separate **Application** by each **Insured**.

   2.  No statement in the **Application**, fact pertaining to, or knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured Individual**.

B.  If the **Application** contains any misrepresentations made with the intent to deceive or contains misrepresentations which materially affect the acceptance of the risk or the hazard assumed by the **Insurer** under this Policy, then no coverage shall be afforded for any **Claim** based upon, arising from, or in consequence of, any such misrepresentation with respect to:

   1.  Any **Insured Individual**, who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations) or any **Insured Entity** to the extent it indemnifies any such **Insured Individual**; or

   2.  Any **Insured Entity**, if any past or present Chief Executive Officer, Chief Financial Officer or Chief Information Officer (or any equivalent position) of the **Insured Entity** knew of such misrepresentation (whether or not such individual knew such **Application** contained such misrepresentations).

## XII. RESCINDABILITY

The **Insurer** shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.



POLICYHOLDER NOTICE

# IMPORTANT POLICYHOLDER INFORMATION EMPLOYMENT PRACTICES RISK MANAGEMENT HOTLINE

We are pleased to inform you of the following employment practices risk management resources, which are accessible to you as a Hanover policyholder.

The Hanover has teamed up with Jackson Lewis P.C., a national Employment Practices and Labor Relations law firm to provide expert risk management services. Our policyholders have access to an exclusive hotline where experienced employment attorneys are prepared to assist and address your employment related questions. The dedicated telephone number for Hanover policyholders is:

<div align="center">

## 1-866-758-6874

</div>

This hotline is made accessible to assist our policyholders on a broad range of employment related subjects such as forms of harassment, insubordination, wage and hour issues, leaves of absence, immigration processes, employment-at-will concepts and employment issues outside the U.S.

This service is <u>not</u> intended to provide a determinative answer regarding specific employment situations or issues that are more appropriately addressed with legal counsel. Such situations would include specific personnel actions, current or prior Equal Employment Opportunity Commission ("EEOC") investigations, employee performance, compliance with state or federal employment statutes, employment contracts or benefits administration.

When calling the hotline, the caller will be asked to provide his or her name, the name of the company on the Hanover policy, the policy number as well as the caller's email address, mailing address and telephone number. The nature of the discussions on the hotline will not be shared with the Hanover. However, for informational purposes, Jackson Lewis will provide Hanover with a list of callers and time spent on the call.

As a reminder, whenever you become aware of a current or potential claim you should also immediately give notice to Hanover in accordance with the policy terms and conditions.

Since its founding in 1958 Jackson Lewis, a national firm employing roughly 600 labor and employment lawyers, has exclusively represented management in cases involving a full spectrum of workplace law issues. You can learn more about the firm and access additional information through their website at www.jacksonlewis.com

*Please note that the independent risk management services offered by Jackson Lewis P.C. are accessible to you as a policyholder of The Hanover Insurance Company or one of its subsidiaries and affiliates. The Hanover is independent from Jackson Lewis P.C. and is not responsible for any fees or charges you may incur for services or products which may be offered to you, or for which you may contract with Jackson Lewis P.C. Under no circumstances should the recommendations, services or products of Jackson Lewis P.C. be construed as recommendations, services or products of The Hanover Insurance Group, Inc. By making this service provider accessible to you, The Hanover does not assume (and specifically disclaims) any duty, undertaking or responsibility to you regarding the employment risk management services of Jackson Lewis P.C.*





| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 1 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# CRISIS MANAGEMENT COVERAGE

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreement is amended to include:

Crisis Management Expense Coverage

The **Insurer** shall pay for **Crisis Management Emergency Response Expenses** incurred by the **Named Insured** resulting from an **Incident** that causes a **Crisis** that occurs during the **Policy Period**. The **Crisis Management Emergency Response Expenses** must occur during the **Policy Period** and be reported to us no later than six (6) months after the date the **Crisis** began.

The **Insurer's** maximum limit of liability for **Crisis Management Emergency Response Expenses** is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations and is excess of the applicable Retention stated in Item 4. of the EPL Declarations.

B. For the purpose of this endorsement:

1. **Crisis** means the public announcement that an **Incident** occurred on the **Named Insured's** premises or at an event sponsored by the **Named Insured**.

2. **Crisis Management Emergency Response Expenses** means expenses for services provided by a **Crisis Management Firm**. **Crisis Management Emergency Response Expenses** do not include:

   a. Compensation, fees, benefits, overhead, charges or expenses of any **Insured**; or

   b. Any expenses that are covered or reimbursable to the **Named Insured** under any other valid and collectible insurance.

3. **Crisis Management Firm** means any service provider hired by the **Named Insured** and approved in writing by us. The **Insurer's** consent will not be unreasonably withheld.

4. **Incident** means:

   a. An accident or other event resulting in the death or **Serious Bodily Injury** to three (3) or more individuals; or

   b. The accidental discharge of pollutants.

5. **Serious Bodily Injury** means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 1 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

C. If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability for such **Crisis Management Emergency Response Expenses** shall be the limit shown in paragraph A. above or the limit, benefit or loss available under such other Coverage Part or endorsement, whichever is greater.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Endorsement

| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 2 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## EMERGENCY REAL ESTATE CONSULTING FEE SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreement is amended to include:

Emergency Real Estate Consulting Fee Coverage

The **Insurer** shall pay the **Named Insured** for any realtor's fee or real estate consultant's fee required because the **Named Insured** must relocate due to the **Unforeseeable Destruction**, during the **Policy Period**, of the **Named Insured's** primary location.

The **Insurer's** maximum limit of liability under this provision is $ $25,000 per **Policy Period** which shall not reduce, and is in addition to the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations and is excess of the applicable Retention stated in Item 4. of the EPL Declarations.

B. For the purpose of this endorsement:

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provision of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

A. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

B. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Unforeseeable Destruction** means damage resulting from a **Certified Act of Terrorism**, fire, crash or collapse which renders all of the **Named Insured's** primary location(s) completely unusable.

C. If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability for coverage, as provided by this endorsement, shall be the limit in paragraph A. above or the limit, benefit or loss available under such other Coverage Part or endorsement, whichever is greater.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Form 906 1103 Ed. 10/15

Page 1 of 1





Coverage Part: Employment Practices Liability

Issued To: Bela Flor Nurseries, Inc.

Issued By: The Hanover Insurance Company

Endorsement Number: 3

Policy Number: LHC-A866791-09

Effective Date: 04/15/2024

# EXECUTIVE OFFICER REPLACEMENT EXPENSES SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreement is amended to include:

<u>Executive Officer Replacement Coverage</u>

The **Insurer** shall pay the **Named Insured** for **Replacement Expenses** incurred due to the replacement of the Chief Executive Officer or Executive Director who dies or becomes totally or permanently disabled due to **Accidental Injury** while in the course of the **Insured's** business and during the **Policy Period**.

The **Insurer's** maximum limit of liability under this provision is $25,000 per **Policy Period** which shall not reduce, and is in addition to the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations and is excess of the applicable Retention stated in Item 4. of the EPL Declarations.

B. For the purpose of this endorsement:

**Accidental Injury** means the unintended, unforeseeable and unexpected physical injury, trauma or damage to an **Insured Individual's** body.

**Accidental Injury** does not include:

1. An intentional act by any **Insured**, director, officer or trustee; or

2. An act of suicide or attempted suicide, whether or not the deceased was sane or insane at the time of the attempted suicide; or

3. An act of war; or

4. A disease process.

**Replacement Expenses** means:

A. Costs of advertising the employment position opening;

B. Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

C. Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including but not limited to overtime pay, costs to verify the background and references of the applicants, and legal expenses incurred to draw up employment contracts.

D. If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability for such **Replacement Expenses** shall be the limit

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 3 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

shown in paragraph A. above, or the limit, benefit or loss available under such other Coverage Part or endorsement, whichever is greater.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 4 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# TEMPORARY MEETING SPACE SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

Section I. Insuring Agreement is amended to include:

<u>Temporary Meeting Space Coverage</u>

The **Insurer** will pay for costs for the rental of temporary meeting space incurred by an **Insured Entity** as a result of the temporary unavailability of the **Insured Entity's** primary office space due to the failure of a climate control system or leakage of a hot water heater which occurs during the **Policy Period**. This coverage will only apply to the rental of temporary meeting space required for meeting with parties that are not **Insureds**.

The **Insurer's** maximum limit of liability for coverage under this endorsement is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations and is excess of the applicable Retention stated in Item 4. of the EPL Declarations.

If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability shall be the limit shown in paragraph A. above, or the limit, benefit or loss available under such other Coverage Part or endorsement, whichever is greater.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




Endorsement

| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 5 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# WORKPLACE VIOLENCE COUNSELING SUPPLEMENTAL COVERAGE

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreement is amended to include:

   Workplace Violence Counseling Expense Coverage

   The **Insurer** shall pay the cost of emotional counseling of **Insured Individuals** incurred by an **Insured Entity** resulting from **Workplace Violence** that occurs during the **Policy Period**.

   The **Insurer's** maximum limit of liability under this provision is $25,000 per **Policy Period** which shall not reduce, and is in addition to, the Maximum Aggregate Limit of Liability stated in Item 3. of the EPL Declarations and is excess of the applicable Retention stated in Item 4. of the EPL Declarations.

B.  For the purpose of coverage provided by this endorsement:

   **Workplace Violence** means any intentional use of or threat to use bodily force by any individual with intent to cause harm and which results in injury or death of an individual while on the **Insured Entity's** premises.

C.  If coverage is provided under this endorsement and another Coverage Part or endorsement attached to this Policy, then the **Insurer's** maximum limit of liability for coverage as provided by this endorsement shall be the limit in paragraph A. above or the limit, benefit or loss available under such other Coverage Part or endorsement, whichever is greater.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




## Endorsement

| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 6 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# WAGE & HOUR CLAIMS DEFENSE EXPENSE SUBLIMIT

In consideration of the premium charged it is agreed that:

A. Section I. Insuring Agreement is amended to include:

Wage & Hour Claims Defense Expense Coverage

The **Insurer** will pay on behalf of the **Insured**, **Defense Expenses** arising out of any **Wage & Hour Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable.

The **Insurer's** maximum limit of liability for **Defense Expenses** resulting from any **Wage & Hour Claim** shall be $100,000 per **Policy Period** which shall be part of, and not in addition to, the Maximum Aggregate Limit of Liability shown in Item 3. of the EPL Declarations and shall be excess of a Retention of $50,000.

If a matter includes allegations constituting a covered **Employment Claim** and a **Wage & Hour Claim** then the sublimit above shall not apply and the Maximum Aggregate Limit of Liability shown in Item 3. of the EPL Declarations will apply so long as such **Employment Claim** remains part of such matter. If at the time such **Employment Claim** is no longer part of such matter then the sublimit above shall apply unless the amount of **Defense Expenses** incurred at such time exceeds the sublimit above. In this event, the **Insurer** will have no further obligation to pay **Defense Expenses** arising out of such **Wage & Hour Claim**.

B. For the purpose of coverage provided by this endorsement:

**Wage & Hour Claim** means:

A. Any:

1. Written demand first received by an **Insured** for monetary or non-monetary relief including a written demand for reinstatement, re-employment, re-engagement or injunctive relief;

2. Civil proceeding commenced by the service of a complaint or similar pleading;

3. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency;

4. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Insured Entity** against an **Insured** for an **Wage & Hour Violation**, including any appeal therefrom; or

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| Coverage Part: Employment Practices Liability | Endorsement Number: 6 |
|---|---|
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

B. A written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Wage & Hour Claim** described in A.1. through A.4. above.

However, **Wage & Hour Claim** shall not include any arbitration or grievance proceeding pursuant to a collective bargaining agreement.

**Wage & Hour Violation** means an alleged or actual violation of the responsibilities, obligations and duties imposed by any federal, state or local statutory or common law anywhere in the world including regulations promulgated under any such law that governs wage, hour and payroll policies and practices, including but not limited to the Fair Labor Standards Act, as amended.

C. For the purpose of coverage provided by this endorsement Section IV.E.4. of Exclusions is deleted and replaced with the following:

4. The responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law anywhere in the world including regulations promulgated under any such law that governs wage, hour and payroll policies and practices, except the Equal Pay Act, including but not limited to the Fair Labor Standards Act, as amended. However, this exclusion shall not apply to **Defense Expenses** for any Wage & Hour Defense Costs Coverage as provided in paragraph A. of this endorsement; or

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.





Coverage Part: Employment Practices Liability

Endorsement Number: 7

Issued To: Bela Flor Nurseries, Inc.

Policy Number: LHC-A866791-09

Issued By: The Hanover Insurance Company

Effective Date: 04/15/2024

# IMMIGRATION INVESTIGATION DEFENSE EXPENSE SUBLIMIT

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreement is amended to include:

Immigration Investigation Defense Expense Coverage

The **Insurer** will pay **Defense Expenses** on behalf of the **Insureds** resulting from any **Immigration Claim** first made during the **Policy Period** or any applicable Extended Reporting Period, for any **Immigration Wrongful Act** committed or allegedly committed prior to the end of the **Policy Period**.

The **Insurer's** maximum limit of liability for **Defense Expenses** resulting from any **Immigration Claim** shall be $75,000 per **Policy Period** which shall be part of, and not in addition to, the Maximum Aggregate Limit of Liability shown in Item 3. of the EPL Declarations and shall be excess of the applicable Retention shown in Item 4. of the EPL Declarations.

B.  For the purpose of coverage provided by this endorsement, Section III. Definitions, the definition of **Claim** is deleted and replaced with the following:

**Claim** means an **Employment Claim**, a **Third Party Claim** and an **Immigration Claim**.

C.  For the purpose of coverage provided by this endorsement:

**Immigration Claim** means a criminal investigation of any of the **Insureds** by any governmental agency but shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

**Immigration Wrongful Act** means an actual or alleged violation of the responsibilities, obligations or duties imposed by the Immigration Control Act of 1986 or any other similar federal or state laws or regulations in connection with the actual or alleged hiring or harboring of illegal aliens.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 8 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# WORKPLACE VIOLENCE EXPENSE
# (SUBLIMIT)

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreements is amended by adding the following:

Workplace Violence Expense Coverage

The **Insurer** will reimburse the **Insured** for **Workplace Violence Expenses** incurred by an **Insured Entity** which results from **Workplace Violence**.

B.  Section III. Definitions is amended to include:

**Premises** means the buildings, facilities or properties occupied by an **Insured Entity** in conducting its business.

**Workplace Violence** means any intentional use of or threat to use deadly force by any individual with the intent to cause harm and which did or could result in the injury or death of an individual while on the **Insured Entity's Premises.**

**Workplace Violence Expenses** means any reasonable fees, expenses or cost of:

A.  An independent security consultant for up to ninety (90) days following the date that the **Workplace Violence** occurs;

B.  An independent public relations consultant for up to ninety (90) days following the date that the **Workplace Violence** occurs;

C.  A counseling seminar for all **Employees** conducted by an independent consultant following the **Workplace Violence**;

D.  Independent security guard services for up to fifteen (15) days; and

E.  An independent forensic analyst.

C.  Section VI. Limit of Liability is amended to include:

The **Insurer's** maximum liability for all **Workplace Violence Expenses** during the **Policy Period** shall not exceed $75,000 which is part of and not in addition to the Maximum Aggregate Limit of Liability shown in Item 3. of the EPL Declarations.

D.  Section VII. Retention is amended to include:

No retention shall apply to Workplace Violence Expense Coverage.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Case 4:24-cv-00730-SRB    Document 1-1    Filed 11/05/24    Page 94 of 98



| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 9 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

## AMEND DEFINITION OF THIRD PARTY

In consideration of the premium charged it is agreed that:

Section III. Definitions, the definition of **Third Party** is deleted and replaced with the following:

**Third Party** means any natural person other than an **Insured Individual** or applicant for employment with an **Insured Entity**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 10 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# BIOMETRIC INFORMATION EXCLUSION

In consideration of the premium charged it is agreed that:

Section IV. Exclusions is amended to include:

<u>Biometric Information</u>

Based upon, arising out of or in any way related to the responsibilities, obligations, duties, or rules imposed by any foreign, federal, state or local statutory law or regulation, anywhere in the world including but not limited to the Illinois Biometric Information Privacy Act and the EU General Data Protection Regulation, that governs the collection, storage, destruction, disclosure, protection, use, sale, lease or trade of biometric information including but not limited to the characteristics of any fingerprint, handprint, facial geometry, retinal scan, or voiceprint. However, this exclusion shall not apply to any **Claim** for **Discrimination**, **Retaliation**, **Sexual Harassment**, **Workplace Harassment**, or **Wrongful Termination.**

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.




| | |
|---|---|
| Coverage Part: Employment Practices Liability | Endorsement Number: 11 |
| Issued To: Bela Flor Nurseries, Inc. | Policy Number: LHC-A866791-09 |
| Issued By: The Hanover Insurance Company | Effective Date: 04/15/2024 |

# AMEND CONSENT TO SETTLE
## (DELETE "HAMMER CLAUSE")

In consideration of the premium charged it is agreed that:

Section V. E. of Defense and Settlement of Claims is deleted and replaced with the following:

E. The **Insurer** may conduct any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.


Coverage Part: Employment Practices Liability

Issued To: Bela Flor Nurseries, Inc.

Issued By: The Hanover Insurance Company

Endorsement Number: 12

Policy Number: LHC-A866791-09

Effective Date: 04/15/2024

# PURCHASE RUN-OFF PERIOD

In consideration of the premium charged it is agreed that:

If there is a change in control of the **Named Insured,** pursuant to Section VIII. A. Acquisition of the **Named Insured** of the Common Policy Terms and Conditions, this Coverage Part is amended as follows:

Additional Premium: $14,376.00

Run-Off Period:

Inception Date: 04/15/2024

Expiration Date: 04/15/2030

(12:01 AM standard time at the address show n in Item 1 of the CTC Declarations)

A.  This Coverage Part applies only to **Claims** made and reported during the Run-Off Period set forth above for **Wrongful Acts** which were committed or occurred prior to the Inception Date of the Run-Off Period.

B.  The Run-Off Period does not extend the **Policy Period**, increase the Limits of Liability or change any terms or conditions of the Coverage Part not specifically referenced in this endorsement.

C.  All premium for the Run-Off Period is fully earned as of the Inception Date shown above.

D.  This endorsement will not take effect unless the additional premium, as set forth above, is paid when due. If that premium is paid when due, this endorsement may not be cancelled.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.