IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:24-cv-00730-SRB |
| JAMES LARSON, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff The Hanover Insurance Company's Motion for Judgment on the Pleadings, (Doc. #14), in which it seeks judgment both on its declaratory judgment claims against Defendants James Larson, Steven Bateski, and Brian Aguiar, (Doc. #1), and on Defendants' counterclaims against it, (Doc. #11). The Court held oral argument on July 2, 2025. (*See* Docs. #24, 28.) For the reasons stated below, the motion is GRANTED.

I.     BACKGROUND

This case arises from two business loans that were personally guaranteed by Larson, Bateski, and Aguiar (collectively the "Guarantors") and whether the lenders' efforts to enforce those guaranties are covered by an insurance policy issued by plaintiff Hanover. The Court finds the undisputed material facts to be as follows.

Bela Flor Nurseries, Inc. is a business which was formed under Colorado law but operated in Missouri. (Doc. #19-1; Doc. #14-2.) Bela Flor's officers and board of directors consisted of Larson, Bateski, and Aguiar. (Doc. #14-2.) As relevant here, in 2022 Bela Flor borrowed money from two lenders—Agrifund, LLC, (Doc. #1-2 at 5-39), and Ball Horticultural Company, (Doc. #1-3 at 3-8). Larson, Bateski, and Aguiar each signed a personal guaranty of both the Agrifund

loan, (Doc. #1-2 at 10, 11, 18, 19, 23, 24, 25, 26-27, 38-39), and the Ball loan, (Doc. #1-3 at 5). Bela Flor defaulted on each loan and in 2023 filed for bankruptcy. (Doc. #14-1.)

In 2024 Agrifund filed a lawsuit against the Guarantors, asserting one claim for "Breach of Contract – Guarantors" and alleging that the "Guarantors have failed and/or refused to perform their obligations pursuant to [their personal guaranties of the Agrifund loan] by failing and refusing to repay the amounts due thereunder." (Doc. #1-2 at 1-4, at 3-4, at 3 ¶ 24.) Ball similarly sent the Guarantors a demand letter seeking payment based on their personal guaranties of the Ball loan. (Doc. #1-3 at 1-2.)

The Guarantors tendered both the Agrifund lawsuit and the Ball demand letter to Hanover, which—as relevant here—insured Bela Flor under a "Directors & Officers and Entity Liability" policy. (Doc. #1-1 at 30-71.) The policy identifies defined terms with bold text. The policy's insuring agreement for "individual non-indemnified liability" states:

> The **Insurer** will pay on behalf of each **Insured Individual**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period if applicable, except for **Loss** which the **Insured Entity** pays to or on behalf of the **Insured Individual** as indemnification.

(*Id.* at 32.) The policy defines "Insured Individual" as:

> **Insured Individual** means any past, present or future **Executive** or employee (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** or in an **Outside Capacity**.

(*Id.* at 34.) Hanover denied coverage contending in part that, because the Agrifund lawsuit and the Ball demand letter arose from the Guarantors' *personal* guaranties, under its policy the Guarantors did not qualify as "Insured Individuals" because they did not sign the guaranties "acting solely … on behalf of" Bela Flor. (*E.g.*, Docs. #11-2, 11-7.)

2

Thereafter Hanover filed this case, seeking a declaratory judgment that under the policy it has no duty to either defend or indemnify the Guarantors. (Doc. #1.) The Guarantors responded by filing counterclaims for breach of contract, vexatious refusal, bad faith, and a related Colorado statutory claim. (Doc. 11.) Now pending is Hanover's Motion for Judgment on the Pleadings seeking judgment on all claims. (Doc. #14.)

## II. LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court decides the motion by considering the pleadings and "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019). "The movant bears the burden of clearly establishing that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Id.* The Court must view all facts alleged by the non-moving parties as true and grant them all reasonable inferences. *Id.* "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023).

This case's insurance coverage issue could arguably be governed by either Colorado law or Missouri law, but the parties' briefing states there are no relevant differences or conflicts between the two states' laws such that the Court need not definitively resolve the issue. (Doc. #14 at 10; Doc. #19 at 6.) The Court accepts that position and for convenience will apply Missouri law. *See, e.g.*, *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000).

"Under Missouri law, the interpretation of an insurance policy is a question of law." *Midwest Reg'l Allergy v. Cincinnati Ins. Co.*, 795 F.3d 853, 856 (8th Cir. 2015). "The insured bears the burden of proving coverage under an insurance policy, and the insurer bears the burden of proving the applicability of any exclusion from coverage." *Id.* (cleaned up). "When construing an insurance policy, courts must apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Id.* (cleaned up). "If an insurance policy is unambiguous, [the court] must enforce the policy as written." *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy, or if the policy is reasonably open to different constructions." *Id.* (cleaned up).

"An insurer's duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case[.]" *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 902 (8th Cir. 2017) (cleaned up). "To determine whether an insurer had a duty to defend, courts must compare the language of the insurance policy with the allegations in the complaint." *Id.* (cleaned up). "If the complaint alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* (cleaned up). Thus, "[t]o extricate itself from a duty to defend a suit against the insured, the insurer must demonstrate that there is no possibility of coverage." *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012). If "an insurer has no duty to defend, it also has no duty to indemnify." *Id.* at 907.

### III.     DISCUSSION

Hanover moves for judgment by contending the Guarantors cannot meet their burden of proving coverage under the policy's insuring agreement (i.e., "The **Insurer** will pay on behalf of each **Insured Individual** …") because they do not satisfy the policy's definition of "Insured Individual" (i.e., "**Insured Individual** means any … **Executive** or employee … of the **Insured**

**Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** …").[1]

Hanover argues the Guarantors' agreement to provide personal guaranties means they were not "acting solely … on behalf of" Bela Flor. (Doc. #14.) The Guarantors oppose by raising many arguments. (Doc. #19.)

It appears this type of coverage dispute has not been decided by either the Eighth Circuit or a Missouri state court. But other courts have considered effectively identical facts, concluded there was no coverage, and entered judgment for the insurer. *McRory v. Catlin Specialty Ins. Co.*, 511 F. App'x 632 (9th Cir. 2013);[2] *Sauter ex rel. Sauter v. Houston Cas. Co.*, 276 P.3d 358 (Wash. Ct. App. 2012);[3] *Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.*, 581 F. Supp. 2d 1201,

---

[1] There is no dispute that each Guarantor served as an officer and director for Bela Flor and thus that under Hanover's policy qualified as a Bela Flor "Executive."

[2] *McRory*, 511 F. App'x 632, at **1 (cleaned up):

> "[The plaintiffs] issued personal guarantees for a loan that [a lender] made to the company for which they were directors[.] … [T]he [Directors and Officers] Policy does not cover the giving or breach of obligations under the individual personal guarantees in this case. In no reasonable sense could it be thought that the guarantees were encompassed by the Policy terms. The guarantees were purely individual and were not actions by [the plaintiffs] in their director capacities. [The lender] did not sue them because they were directors; it sued them because they were guarantors."

[3] *Sauter*, 276 P.3d at 359 (cleaned up):

> "Where an insurance policy explicitly provides coverage for the personal liability of a corporate officer incurred for acts performed in his or her official capacity as such, the policy does not insure against losses incurred where the officer acts in his or her personal capacity. Moreover, a guaranty executed by a corporate officer that secures the indebtedness of the corporation is not executed in the officer's official capacity. Such a circumstance would result in the corporation itself guaranteeing its own indebtedness, thus negating the very purpose of the guaranty.

> "Here, [the plaintiff], the chief executive officer (CEO) and manager of [a company], contends that he executed such a guaranty in his official capacity and, hence, that the purported loss that he incurred related thereto was insured by a directors' and officers' liability policy issued to [that company] by [an insurer]. However, because [the plaintiff] executed the guaranty in his personal capacity, the policy provides no such coverage."

1211 (S.D. Fla. 2008).[4] The persuasive value of these decisions is bolstered by Eighth Circuit case law which reaches a similar conclusion. *E.g.*, *Cardinal Health 110, Inc. v. Cyrus Pharm., LLC*, 560 F.3d 894, 900-01 (8th Cir. 2009) (a guaranty's purpose is to bind the individual who signs it personally).

The Court finds these cases highly analogous and instructive and follows them to conclude the Hanover policy does not provide coverage here. The Agrifund lawsuit and the Ball demand letter are plainly not concerned with the Guarantors' actions in their capacities as a Bela Flor officer or director—rather, each arises from and targets the Guarantors' personal guaranties and alleged failures to fulfill the resulting financial obligations. By signing those guaranties each Guarantor bound himself personally such that he was not acting "acting solely … on behalf of" Bela Flor. Each Guarantor's alleged refusal to pay under the guaranty leads to the same conclusion. The Guarantors accordingly do not qualify as an "Insured Individual" and thus do not trigger the policy's insuring agreement.

The Guarantors argue against this result by contending the policy's definition of "Insured Individual" and that definition's use of "solely" are ambiguous given the Policy's other terms and definitions in the Policy. (Doc. #19 at 8-18.) The Guarantors also argue additional information is needed about the scope and substance of each Guarantor's executive capacity. (*Id.* at 18-20.) The

---

[4] *Lucas Waterproofing*, 581 F. Supp. 2d at 1211 (cleaned up):

> "[The insurer] asserts that [a company's owner] is not covered by the [] Policies because he is not an insured. The [] Policies provide that '"executive officers"' and directors are insureds, but only with respect to their duties as your officers or directors.' The underlying judgment against [the company owner] was rendered against him because he signed a Guaranty of Performance of Subcontract, thereby providing a personal guaranty for the work. In doing so, [the company owner] was acting in his individual capacity and not as an officer or director of [the company]. … Therefore, [the company owner] was acting in his personal capacity when he signed the personal guaranty and is not an insured for purposes of the judgment rendered against him in the underlying action.

Court rejects these arguments. Given the policy's insuring agreement expressly states that Hanover "will pay on behalf of each **Insured Individual**," the issue here is whether the Guarantors can satisfy the policy's definition of "Insured Individual," which requires that they have been "acting solely … on behalf of" Bela Flor. A plain reading of that policy reading is unambiguous, and it is not made ambiguous by how the policy defines and uses other terms elsewhere. *See Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 875-76 (8th Cir. 2013) ("The Supreme Court of Missouri has noted that courts may not create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate."). In signing personal guaranties the Guarantors did not act "solely" for Bela Flor under a plain reading of that term. *See State v. Patterson*, 534 S.W.2d 847, 851 (Mo. App. S.D. 1976) (interpreting criminal statute).[5] The Guarantors have not persuasively explained how additional information about their executive roles would create genuine issues of material fact about the parties' coverage dispute.

The parties do not dispute that Hanover's Motion for Judgment on the Pleadings raises an insurance coverage issue which applies to all claims asserted by both sides. Because the Court finds Hanover's policy does not provide coverage for the Agrifund lawsuit and Ball demand letter,

---

[5] *Patterson*, 534 S.W.2d at 851(cleaned up):

> "[W]e have no leave to ignore, alter, or corrupt the ordinary, usual and plain meaning of the word 'solely'; neither may we cripple the word with strained wrenchings at its well-understood import.
>
> "'Solely' is synonymous with 'only,' 'exclusively,' 'entirely,' and 'wholly.' It means 'exclusively for,' 'nothing else,' 'to the exclusion of other purposes,' 'apart from all others,' 'to the exclusion of alternate or competing things,' and 'to the exclusion of all else.' It 'leaves no leeway' and is equivalent to the phrase 'and nothing else.'"

the Court will enter judgment in favor of Hanover's claims and against the Guarantors' counterclaims.

## IV. CONCLUSION

Hanover Motion for Judgment on the Pleadings, (Doc. #14), is GRANTED.

Judgment is ENTERED for Hanover and against the Guarantors on the following claims and counterclaims:

- Hanover's Count 1 claim for declaratory judgment regarding Hanover's duty to defend, (Doc. #1);

- Hanover's Count 2 claim for declaratory judgment regarding Hanover's duty to indemnify, (Doc. #1);

- The Guarantors' Counterclaim 1 for breach of contract, (Doc. #11);

- The Guarantors' Counterclaim 2 for vexatious refusal to pay, (Doc. #11);

- The Guarantors' Counterclaim 3 for bad faith, (Doc. #11); and

- The Guarantors' Counterclaim 4 for violation of Colorado statutory law, (Doc. #11);

With judgment entered, this case is CLOSED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

Dated: July 2, 2025